| 37 | 265 |
|----|-----|
| 101 | 131 |
| 101 | 146 |

———◦◦◦◦———

STATE OF MISSOURI, Respondent, *v.* THE HANNIBAL AND ST. JOSEPH RAILROAD COMPANY, Appellant.

1. *Revenue—Corporations—Railroads.*—The lands granted by the State to the Hannibal and St. Joseph R.R. Co. by the act of Sept. 20, 1852, are not taxable for State and county purposes under the general revenue law. (Laws 1863-4, p. 65.) The property of the company is represented by its shares of stock, and there cannot be any other property over and above the stock held by the stockholders. (See Hann. & St. Jo. R.R. Co. v. Shacklett, 30 Mo. 550.)

*Appeal from Livingston Circuit Court.*

*Carr*, for appellant.

*Dixon & Vories*, for respondent.

HOLMES, Judge, delivered the opinion of the court.

The question presented in this case is, whether certain lands which were granted by the State to the Hannibal and St. Joseph Railroad Company, by the act of the General Assembly of September 20, 1852, (R.R. Laws, 115,) were taxable in the county of Livingston for the year 1864, for State and county purposes, under the general revenue law, (Laws of 1863–4, p. 65,) which enumerates as objects of taxation all "shares of stock in banks and other incorporated companies, the property of which alone shall be taxed," and "all property owned by incorporated companies, over and above their capital stock."

By the third section of the act making the grant of these lands (R.R. Laws, 116), it was provided as follows: § 3. In consideration of the grants and privileges herein conferred upon said company, the said company shall, on the first day of December of each year, after said road is completed, opened, and in operation, and declares a dividend, pay into the treasury of the State a sum of money equal to the amount of State tax on other real and personal property of like value, for that year, upon the actual value of the road-bed, buildings, machinery, engines, cars, and other property of said company, which shall be as a consideration to the State for the execution of the trust reposed in the State by the act of Congress of the United States, approved June 10th, 1852, entitled an "Act granting the right of way to the State of Missouri, and a portion of the public lands, to aid in the construction of certain railroads in said State"; and for the purpose of ascertaining the value of the same, the president of the company was to furnish to the Auditor of the State, each year, a statement of the valuation, under oath, giving "the actual value of the road-bed, machinery, buildings, en-

gines, cars, and other property of said company, from which statement the Auditor was to charge the amount of the tax appearing to be due the State, and the same was to be paid by the company, under certain penalties; and after two years the tax was to be paid without regard to a dividend being declared or not. It was further provided that if the land remained unsold for ten years after the completion of the road the same should then be disposed of at public auction. (§ 6.)

In the case of the Hann. & St. Jo. R.R. Co. v. Shacklett, (30 Mo. 550,) it was decided, under the same laws, that the property of this company, " consisting of the road-bed, depot, cars, locomotives, and all the real and personal property ne-. cessary for the operation of the road," was not liable to taxation, under the general revenue law, for State and county purposes, in any county ; that the company was exempted by its charter from such taxation, under the clause which declared that every person who shall cease to be a stockholder, shall also cease to be a member of said company ; and that the stock of said company shall be exempt from all State and county taxes; and that the property above mentioned was to be considered as being represented by the stock. It was also held that the third section of the act aforesaid imposed a tax on the company in respect of the property therein mentioned, namely, "the road-bed, buildings, machinery, engines, cars, and other property of said company," which was to be assessed and collected in the mode specifically pointed out in the act, and that a double taxation could not have been intended by the Legislature. "A double taxation," says Napton, J., " on the same property is manifestly not intended, either by this enactment or by the provisions of the general revenue law." Now, the only *other property* of the company, besides that of the same description, which was the subject of decision in that case, which is sought to be taxed here in the county of Livingston, under the general revenue act, is a portion of the lands which were granted by the act of 1852, and which are subjected to taxation once, under the special

provisions of that act. To allow them to be taxed in this manner in that county, would be to subject them to double taxation; and the case comes clearly within the principle of that decision. If the property of a corporation is taxed in the hands of the stockholders, it cannot be taxed in the hands of the corporation also. A corporation is taxable like a natural person, but it is not to be taxed twice. (Ang. Corp. 429–31; Bangor & Piscat. R.R. Co. v. Harris, 22 Me. 533; Redf. Railw. 527.)

A general view of the original charters of the several railroad companies in this State would seem to show that it has been the policy of the State to exempt the property of these corporations from taxation otherwise than as stock held by the stockholders. In some instances it is provided that the whole property of the company, real and personal, shall be taken and deemed as personal property vested in the stockholders; and even the stock of this corporation is expressly exempted from taxation. It might be said that the natural persons who held the stock could be taxed as such persons in respect of the shares of stock owned by them, and that the corporation, as an artificial person, might be taxed in respect of the real and personal estate owned by the company, without necessarily involving a double taxation of the same person; but the taxation would still be double in respect of the same actual property, the stock certificate merely representing the several interest of the shareholder in the property of the corporation. On the authority of the case above cited, it must be held here that an exemption of the stock is to be taken as an exemption of the property represented by it. But this policy was changed, by the act of 1852, so far as to make the whole property owned by the corporation subject to taxation by the State, in the special mode and to the extent provided in that act. These lands were a donation by Congress to the State for the purpose of aiding in the construction of railroads within the State, and they were granted by the State to this corporation for the purpose of enabling it to complete a great public improvement for the

general benefit of the people, in pursuance of the liberal intent of Congress. While owned by the Government they were not liable to taxation, but the State saw fit, in making the grant, to require as a condition from the corporation that an annual tax should be paid to the State, after a specified time. The company was allowed to hold these lands unsold for ten years after the completion of the road. It was evidently contemplated that the company might borrow money for the completion of the road, and that the lands should be reserved until they would command a higher price. If the lands had already been sold, and the proceeds applied to the building of the road, or to the extinguishment of a debt created for that purpose, the property would then have taken such direction in pursuance of the objects of the donation, that there could be no possible doubt that it was represented by the stock in the hands of the shareholders, and that an exemption of the stock would impliedly exempt the real and personal property of the corporation. (Redf. Railw. 531.)

But it is insisted that it is now held as "*other property over and above their capital stock*," within the meaning of the general revenue law. In the case of the Hann. & St. Jo. R.R. Co. v. Shacklett, it was deemed unnecessary to decide what was meant by these words. The clause was said to be obscure. It is pretty evident that the framer of that act did not have present to his mind any clear and definite ideas of the subject of which he was speaking. It is not easy to see how, in any legal sense, a corporation could own other property than that which would be represented by the stock in the hands of the shareholders. The shares of stock might be above or below *par value*, according to the amount and value of the property owned by the corporation, and it is to be presumed that shares of stock would be taxed, if subject to taxation, in proportion to their value, like other kinds of property. (Redf. Railw. 531.) In this way the whole property would be once taxed against the natural persons, who are, at last, the only real owners of the property held by the corporation in which they are the stockholders.

18—VOL. XXXVII.

# 270 ST. JOSEPH.

State ex rel. Bassett v. Mayor of St. Joseph.

It would seem to be clear that, in contemplation of law, there, cannot be any other property of this corporation, over and above the stock held by the shareholders. This conclusion necessarily results from the very nature and constitution of the corporation. We are of opinion, therefore, that these lands were not taxable in the county of Livingston as such other property.

The judgment is reversed and the proceeding directed to be dismissed.

Judge Wagner concurs; Judge Lovelace absent.