OF

## THE STATE OF MISSOURI.

MARCH TERM, 1873, AT ST. LOUIS MO.

( CONTINUED FROM VOL LII. )

————o————

PACIFIC RAILROAD Co., Appellant, *vs.* CASS COUNTY, *et al.*, Respondents.

1. *Revenue—Taxation—Exemption from—Presumptions.*—Where exemption from taxation is claimed under any law, it must not be from presumption. The abandonment of the sovereign right to exercise this vital power, can never be presumed; the intention to abandon it must appear in the most clear and unequivocal terms.

2. *Statute, construction of—Repeal—Later general affirmative statute does not repeal former which is particular, except when.*—A statute can only be repealed by express provision of a subsequent law, or by necessary implication. To repeal a statute by implication there must be such a positive repugnancy between the new law and the old, that they cannot stand together or be consistently reconciled. There should be a manifest and total repugnancy in the provisions of the new law, to lead to the conclusion that the later law abrogated, or was designed to abrogate the former. A later statute which is general and affirmative, does not abrogate a former one which is particular, unless negative words are used, or unless the acts are irreconciliably inconsistent.

| 53 | 17 |
| 114 | 11 |
| 114 | 578 |
| 53 | 17 |
| 134 | 224 |
| 53 | 17 |
| 153 | 653 |
| 82a | 118 |
| 53 | 17 |
| 164 | 54 |
| 53 | 17 |
| 170 | 3391 |

**17**

3. *Revenue—Assessment—Board of Equalization—Notice.*—The Assessor of Cass County for 1869, made no assessment of the property of the Pacific Railroad, and his assessment book when returned, contained no entry in relation to said road. Subsequently, the County Board of Equalization verbally ordered an entry to be made on the assessor's book of an assessment by themselves of taxes against said road for said year, 1869. This order and entry were made without notice to the Railroad. No taxes were charged against the Railroad on the tax-book for 1869, or on the delinquent book for that year, until Dec. 1871, when an entry was made by order of the County Court of that date, without notice to the company, ordering that the assessment made by the Board of Equalization, and the taxes thereon, be placed on the copy made by the clerk for the use of the collector, and that the clerk make out a copy for the use of the collector. *Held,* that such assessment was clearly without authority of law and void. 1st. Because no notice was given as required by the Act of 1868. 2nd. Because the Board had no authority to make an assessment. It had power to increase or diminish the valuation made by the assessor but had no power to make an assessment of its own.

4. *Revenue—Personal property—Where taxable—Railroads—Rolling stock.*—Personal property which is capable of having an actual *situs* is taxable in the county where it is situated; but other personal property which has no *situs* is taxable in the county where the owner resides. Rolling stock of a railroad company which is in a county which is not the legal residence of the corporation, only in transit or temporarily, is not taxable in such county; but is to be assessed and taxed in the county which is the legal residence of such corporation.

## *Appeal from St. Louis Circuit Court.*

*J. N. Litton,* for Appellant.

I. The mode provided by the Act of December 25th, 1852, § 12, was, when accepted by appellant on January 1st, 1853, the only legal method for collection of taxes for State as distinguished from county purposes.

II. This Act of December 25th, 1852, provided for the collection of taxes due the State for county purposes, not less than for those more technically known as State. (Hannibal & St. Joe. Railroad vs. Shacklett, 30 Mo., 550; State to use of Pacific R. R. vs. Dulle, 37 Mo., 265.)

The tax-bills at bar are identical in all respects with those before the court in the Hannibal & St. Joe. Railroad cases.—Both were for county, as well as other taxes.

No intimation was given in those cases of any distinction between taxes for county and taxes for State purposes.

In the case in 30 Mo., 555, the court says, this act "expressly exempts the Pacific Railroad from taxation, unless in the mode and at the time specified."

The charter of the Hannibal & St. Joe. Railroad, at the time the tax bills which were discussed by this court in those cases were made, was the same in its provisions as this Act of December 25th, 1852.

This Act of December 25th, 1852, continues the complete immunity from taxation granted by the Act of March 1st, 1851, by declaring that the road shall be "exempt from taxation" until completed. This includes county taxes. (Southern R. R. vs. The Mayor, 38 Miss., 334; O'Donnell vs. Barly, 24 Miss., 386.)

The legislature having provided for all taxes up to the completion of the road, in the same breath declares how taxes shall be collected after that time. This special mode of collection must be held to include all taxes. There could be no object in having taxes for county purposes levied in one way, and for State in another. (N. Y. & Erie R. R. vs. Sabin, 26 Penn., 244, is directly in point.)

To still leave the road liable to be taxed and sold by counties in sections, was to inflict the very evils that the mode provided by this act for taxing the road as an entirety was designed to prevent.

The only warrant for the taxation of the road after completion, is the clause that it shall then be "subject to taxation at the rate assessed by the State on other real property," etc. The word "State" here, it is insisted, means counties, townships and other municipalities. But that when the same sentence provides how these taxes shall be collected, it is insisted that the word State means only for taxes for State purposes.

Taxes levied by the State for county and other local purposes, are no less State taxes than those levied for what are technically known as State purposes. (3 Harrison, (N. J.,) 72.)

Either appellant is exempt from all except the latter class of taxes, or all taxes must be collected by return to the State Auditor.

The provision in the Hannibal & St. Joe. R. R. charter was narrower than this, and yet this court held that to provide for all taxes.

The mere fact that the tax is paid into the State Treasury, has been repeatedly held to be no ground for construing similar acts not to include county taxes. (3 Rich. Law, 342; 1 Zabr., 558; 9 Yerger, 499; 5 Ills., 304; 6 Bush. Ky., 127.)

III. There never has been any express repeal of the Act of December 25th, 1852, nor any by implication. (City of St. Louis vs. Insurance Co., 47 Mo., 146.)

IV. If the appellant is taxable for county purposes under the general revenue law, it is clearly taxable under 2 W. S., (1870,) p. 1169, §§ 23, 24, through its capital stock.

Assuredly this court will not hunt for a pretext for double taxation. The Constitution, (Art. II, § 30,) forbids it, and the Hannibal & St. Joe. Railroad cases, before cited, are express and decisive on the point that it cannot be taxed on its property, and through its capital stock also.

If other authorities be desired they are numerous and uniform. (Bangor R. R. vs. Harris, 21 Maine, 534; Gordon's Ex. vs. Baltimore, 5 Gill. Md., 236; Rome R. R. Co. vs. Rome, 14 Geo., 275; New Haven vs. City, 31 Conn., 106; Mayor of Baltimore vs. Balt. & Ohio R. R., 6 Gill. Md., 295; 51 Ills., 304; 3 Rich. Law, 342; Gardner vs. State, 1 Zabr., 558; 5 Ired., 516; 3 Zabr., 500; Farmers' Bank vs. Commonwealth, 6 Bush, Ky., 127.)

V. Cass County had no right to tax any part of the rolling stock. (17 Gratt., 176; Morgan Co. vs. R. R., 14 Ills., 163; 21 Gratt., 604; Wiggins Ferry Co. vs. St. Louis, 11 Wall., U. S., 423.)

VI. The assessment and levy of taxes for 1869, was entirely without warrant.

The county Board of Equalization had no authority to assess property which is not returned to them.

A verbal order is no order.

*Lackland Martin & Lackland,* for Respondent.

I. The charter of the plaintiff contains no provision exempting plaintiff's property from taxation. (Sess. Acts 1849, p. 219.) The exemption allowed by the act approved March 1, 1851, (Sess. Acts 1851, p. 271, § 6.) expired March 1, 1856.

II. By section 12 of the act approved December 25, 1852, (Sess. Acts of 1852, 10,) the road-bed, buildings, machinery, engines, cars, and other property of plaintiffs are liable to be taxed two years after the completion of the road, whether any dividend shall have been declared or not. The agreed case admits that the road was completed, &c., April 6, 1866. Two years after this date the road-bed, buildings, machinery, engines, cars, and other property, as such are taxable, as the property of the corporation, and nothing whatever is said in any part of the act indicating that the property of the Company shall be taxed through its stock. The property above named belonged to the corporation. The stock is the property of the stockholders and does not belong to the corporation at all.

This 12th section of said act of December 25, 1852, only applies to the State tax. No tax was ever assessed by the auditor, or paid by the company, under this section. The provisions of this section are only cumulative and the act does not pretend to restrict the power of County Court to levy and collect taxes for State and County purposes.

III. Section 9, page 1161, Vol. 2, Wagner's Statutes provides "that all property, personal, by the laws of this State, situate, in the county other than the one in which the owner resides, shall be assessed in such last mentioned County."

The court in this connection is referred to the sections 27 and 28, of the Revenue Statute. (2 W. S., 1169.)

It is apparent that the mode therein prescribed, is only a mode by which taxes are levied and collected of the owners of stock upon the shares of stock owned by them as their own private property. It is in effect the money of the owners of stock which goes to satisfy taxes due upon their own private property, collected through the instrumentality of the corporation. (State of Mo. ex rel. N. M. Cent. R. R. Co., vs. Linn

Co. Court, 44 Mo., 504; 42 Mo., 425.) The first section of the Revenue Act, (W. S., 1159,) declares in substance that all property, real and personal, except as stated in the next section shall be liable to taxation.

The exception does not cover the property taxed in this case.

IV. Section 13 Revenue Act, Wagner's Statute, p. 1163, provides for a county board of equalization, consisting of County Clerk, County Surveyor, presiding justice of the County Court and the County Assessor.

The 15th section provides that in case the valuation of property is raised, public notice shall be given by publishing in a newspaper or by posters. There is no raising of valuation in the case.

The 16th section provides that " The County Clerk shall keep an accurate record of the proceedings and orders of the board, and the Assessor shall correct all erroneous assessments, and the Clerk shall adjust the tax books according to the orders of said board, and the orders of the State board of equalization."

If the Assessor omitted the property of plaintiff, this was an error of omission, which could be corrected under section 16, which was accordingly done.

V. Both of these tax bills appeared upon the collector's book, and neither he nor the County of Cass is liable for any irregular or erroneous assessment, if any such there was. See the cases above cited. (Pacific Railroad vs. Dulle, 48 Mo., 282 ; Walden vs. Dudley, 49 Mo., 419 ; North Mo. R. R. Co. et al. vs. Maguire, 49 Mo., 468; St. Louis Mut. Life Ins. Co. vs. Charter, 47 Mo., 483.)

Ewing, Judge, delivered the opinion of the court.

The respondent having levied certain taxes for State and county purposes against the appellant for the years 1869 and 1870, payment of which was enforced by the seizure and sale of its property as to the taxes of 1870, the object of this proceeding is to determine certain questions of law in relation to

the liability of the road to taxation, and the proper mode of assessment.

The cause was submitted to the Circuit Court at special term, upon an agreed statement of facts upon which a judgment *pro forma* was rendered for the defendant, and again at, General Term; from which the cause is brought here by appeal. The material facts are that the road was completed and in operation in April, 1866, and has never declared a dividend ; that on 1st of February, 1868, it made, through its president, its first return to the State Auditor, as required by the act of December 25, 1852 ; that no taxes were ever assessed thereon by the Auditor, that the road is a continuous line extending from St. Louis to Kansas City, 283 miles, through eleven coun. ties, and operates connecting lines of rail in the State of Kansas. The principal office of the company is in the City of St. Louis, where its directors reside, and hold their meetings, where also its managing officers live and attend to the business of the company, and where its records are kept and its business transacted ; that its principal machine shops, car sheds, and repair shops are in said city, and its rolling stock, when not in actual use on the road, is also kept at St. Louis and returned to said city ; that it has three freight and passenger depots at way stations in Cass County, where passengers and freight are received and discharged, and no other business is transacted except such as is incidental to the receipt and delivery of freight ; that thirteen miles of its track are constructed and located in Cass County, and no rolling stock is in said county, except when in actual transit or while waiting to receive and discharge freight and passengers.

It is also agreed, for the purpose of this suit only, that the assessor of Cass County for 1869, did not make any assessment of any property of the Pacific railroad ; that he did not make any return to the County Court, of the original or any copy of his assessment book until March 1869, when he made affidavit of his book and returned it to the county court ; and when so returned it contained no entry in relation to the Pacific railroad. Subsequently the county board of equalization

verbally ordered the following entry to be made on part first (real estate part) of said assessor's book.

"The board of equalization of taxes for Cass County, now at this time proceed to assess the Mo. Pacific railroad in Cass Co. for the taxes for the year 1869, and do assess the same as follows "; then follows a statement of the property, being the road-bed in the County, and the County's proportionate share of the rolling stock with the assessed value annexed. No order to that effect appears on the record of proceedings of said board of equalization. The verbal order and its entry in the assessor's book was made without notice to the Pacific railroad either by advertisement in a newspaper or by poster. The assessment of the rolling stock was made by esti-mating the value of all the rolling stock used on the entire road from St. Louis to Kansas City, (283 miles in length) and then assessing it for Cass County in the ratio of the entire length of the road to the number of miles in that county.

No taxes were charged against the company on the tax book for 1869; and no entries were made in relation to it, on the delinquent tax book for that year, until December 19, 1871, which entry was made under an order of the county court of the same date, and without notice to the company. This order recites that the railroad was assessed for the taxes of 1869, that said taxes were levied by the county court and were extended by the clerk on the assessor's book for that year, but, by neglect of said clerk, they were not placed on the copy thereof, made by the clerk for the use of the collector; and it is ordered that the assessment and the taxes thereon be placed by the clerk on said copy, and on the delinquent tax books and sale book for the taxes of that year, and that the clerk make out a receipt for the same and deliver it to the collector. On the 21st of December, 1871, the collector seized a locomotive and train of cars for the taxes of 1869 and 1870, and in January, 1872, sold them for the taxes of 1870 only. It is further agreed that if there was any irregularity or error in the assessment or taxation of the Pacific railroad for the year 1870, or the proceedings in relation to the sale of their

said property, such that the purchaser of said locomotive and cars would not take a valid title to the same as against said road, then there shall be a judgment for nominal damages and costs against the county and A. C. Brant, as to the taxes of 1870, in favor of the road. But if the court shall be of opin- ion there were no such irregularities and that a valid title passed by such a sale, and shall be further of opinion that none of the propositions claimed by the appellant as to the mode and manner of taxation are correct, but are each and all erroneous, then there shall be a judgment against it for one cent and costs. A similar stipulation is made with reference to the assessment and taxation for 1869, and as to the effect of a sale of property for the taxes of that year in case a sale has . been made.

The charter of the plaintiffs granted March 12th, 1849 contains no provision exempting its property from taxation, (Sess. Acts 1849, p. 219.)

By an act amendatory of the charter, approved March, 1851 (Sess. Acts 1851, p. 271,) it provided, that the capital stock together with all machines, wagons, cars, engines and car- riages belonging to the company, together with all their works and other property and profits which shall arise from the same, shall be vested in the respective shareholders of the company forever, in proportion to their respective shares, and the same shall be deemed personal estate and shall be exempt from all public charge or tax whatsoever, for the period of five years from the passage of the act. This exemption expired in March, 1856. An act was passed Dec. 25th, 1852, (Sess. Acts 1852, p. 10,) to accept a grant of land made to the State by Congress to aid in the construction of certain railroads and to apply a portion thereof to the Pacific railroad. Section 12 of this act is substantially as follows: 1. The Pacific and South- west branch railroads are respectively exempt from taxation, until the same shall be completed and opened and in opera- tion, and shall declare a dividend.

2. When this shall have been done, then the road-bed buildings, machinery, engines, cars and other property of such

road shall be subject to taxation at the actual cash value thereof, at the same rate assessed by the State on other property of like value. And,for the purpose of ascertaining the value of said property, the president of the company is required on the 1st of February in each year after the road is completed, opened, put in operation and declares a dividend, to furnish to the auditor a sworn statement, showing the actual value of the property of the road above mentioned. From this statement the company is to be charged by the auditor with the amount appearing to be due to the State. A failure to pay the amount so charged into the State treasury after the expiration of thirty days, subjects the company to a forfeiture of ten per cent. per month on the amount charged. The company also becomes liable to forfeit and pay $10,000, on the failure of the president to furnish the statement referred to.

It is further provided, that if the company shall fail for two years after said roads are respectively completed and put in operation, to declare a dividend, then they shall no longer be exempt from the payment of said tax, nor from the forfeitures and penalties therein imposed.

It is admitted that the road was completed, &c., in April, 1866.

1. It is maintained that on Jany. 1st, 1853, when the act of 1852 was accepted by the appellant, the only legal method for the collection of taxes from it for State purposes was that prescribed by said act, and that it is still in force, and that by virtue of that act the corporation is exempt from taxation for county purposes.

The temporary exemption of the company from taxes under that act, it may be conceded, was broad enough to apply to all taxes whatever. But this exemption ceased on the completion of the road, and then its property became liable to tax in the manner prescribed by this act. The tax was to be paid to the State, and to be paid into the State treasury. The valuation is made by the president of the company, and from the statement furnished by him the Auditor shall charge the company with the amount appearing to be due to the State

and in case of a failure on the part of the company to pay the amount so charged into the State treasury, certain penalties are incurred. If there is any exemption from county or other taxes it is certainly not expressed, nor is there anything in the language that imports such exemption in the remotest degree. We are not at liberty to presume that such was the intention of the legislature.

The abandonment of the sovereign right to exercise this vital power can never be presumed. The intention to abandon it, must appear in the most clear and unequivocal terms. (City of Lexington vs. Aull 30 Mo., 480 ; Providence Bank vs. Billings, 4 Pet., 561 ; Gordon vs. Appeal Tax Court, 3 How., 133 ; Christ Church vs. Philadelphia, 24 How., 300 ; Jefferson Branch vs. Skelly, 1 Black., 447 ; Washington University vs Rouse, 42 Mo., 321.)

When this act was passed there was a provision in the general revenue law, which had long been in force, and is still in force, that empowered the several county courts to levy such sums annually as were necessary to defray the expenses of their counties, by a tax upon all property made taxable by law (with certain exceptions that do not affect this case) for State purposes,but which could not "exceed the State revenue tax on the same subjects of taxation" more than a certain per centum therein named. As the act of 1852 modified the general revenue law as to the mode of levying the State tax so far as the appellant was concerned, these acts are to be construed as in *pari materia*, the former law making special provision with regard to the mode of levying the tax "due the State," differing from that prescribed by the general revenue law, and using language which recognized the distinction between a State tax and a tax for county purposes.

As these terms are used in that law, an intention to exempt the company from taxation for county purposes, is as clearly negatived as if it had been expressed in so many words.

The silence of the act in reference to county and other local taxes, is as significant as its clear expression is in reference to State taxes.

2. It is conceded that there has been no express repeal of the act of December 1852, or that part of it relating to the taxation of appellant, and we have not been referred to any statute nor have we seen any provision, which, by any fair or reasonable construction, has this effect. A statute can be repealed only by an express provision of a subsequent law, or by necessary implication.

To repeal a statute by implication there must be such a positive repugnancy between the provisions of the new law and the old, that they cannot stand together, or be consistently reconciled. There should be a manifest and total repugnancy in the provisions of the new law, to lead to the conclusion that the latter law abrogated or was designed to abrogate the former.

A later statute which is general and affirmative, does not abrogate a former one which is particular, unless negative words are used or unless the acts are irreconcilably inconsistent. (Sedgw. Stat. & Const. Law, 123; Duar. Stat., 532–33; 37 Mo., 597; State *ex rel.* Mo. & Miss. R. R. Co., vs. Macon Co., 41 Mo., 453.)

The Constitution provides that no property real or personal shall be exempt from taxation except such as may be used for certain purposes therein mentioned. The revenue law of 1868, (Sec., 1 Art., 1) declares that taxes shall be levied on all property, real and personal, except as stated in the next section. (W. S., 1159.)

It is also provided that the property of manufacturing companies and other corporations named in chapter 69, of the General Statutes shall be assessed and taxed in the same manner as the property of individuals. (W. S., p. 1160, § 4.)

In another section provision is made for taxing shares of stock in banks and other incorporated companies, taxable by law in the name of the corporation. (W. S., p. 1169, § 22.)

This provision has been in all the revenue laws since 1845. In none of the revenue laws which have been enacted since that time, is there any reference to railroad corporations *eo nomine*, and when, as in the act of 1865, and re-enacted in

1868, a more particular classification of corporations was made with reference to taxation, the silence of the act as to railroad corporations is still further significant of the intention of the Legislature to leave them subject to the laws which made special provision for levying a tax upon them for State purposes. Section 4 in the act of 1868, before referred to, which designates the mode by which certain classes of corporations, mentioned in chapter 69 of the General Statutes, shall be taxed, does not in my opinion, apply to railroads. But if it does, it is not inconsistent with the 12th section of the act of 1852, before referred to, as to the mode of taxing the property of the appellant for State purposes.

3. But it is insisted, that if county taxes were collectable for 1869 and 1870, under the General Revenue Law by the counties, the property of the appellant is only taxable through its capital stock. If this position is tenable, it pre-supposes a repeal of the 12th section of the law of 1852, a proposition which is strenuously resisted by the learned counsel, for otherwise the company would be taxed by the State, through its visible property, and by the counties in the form of stock.

It also urged, that if the appellant's property is taxable by the counties, this would be the imposition of a double tax. This is true in a certain sense, that is, it is the imposition of an additional tax on the same property, but not for the same purpose. And as we have seen that there was no limit in the charter or in the act of 1852, upon the power of the Legislature, to subject the corporation to taxation for county purposes, the tax could be legally imposed. (State vs. H. & St. Joseph R. R. Co., 37 Mo., 265.)

4. The assessment of the taxes for the year 1869, was clearly without authority of law and void. If it be conceded that the board of equalization had the authority to assess the property of the appellant, which had been omitted by the assessor, they failed to comply with the law in respect to giving notice to the appellant of this assessment. The act of 1868 provides that the board shall raise or diminish the valuation of all such tracts or parcels of land and any personal property, as, in their

opinion have been returned below or above their real value, according to the rate prescribed by the act for such valuation. But after the board shall have raised the valuation of such real estate, it shall give public notice of the fact, specifying the property and the amount raised, either by advertisement in a newspaper in the county, or if there be none, then by posters, one to be put up in each township; and that said board shall meet on a certain day, (therein named) to hear reasons if any be given, why such increase should not be made.

In the agreed statements of facts it is admitted, that no notice was given in any form, and that the company had no knowledge of the action of the board whatever.

If such notice is required where there has been a regular assessment of the property by the assessor, the valuation of which the board has thought proper to increase, it is certainly of equal importance at least, to the tax-payer, that he should have notice, when the board has assumed the functions of the assessor, and placed their own valuation upon the property.

The board has no discretion to dispense with this notice at pleasure, the law is imperative that it shall be given. But this board has no authority to make the assessment; their duties are restricted to hearing complaints and equalizing the valuation and assessment upon all real and personal property within the county which is taxable by law. (2 W. S., p. 1163, § 17.) It had power to increase or diminish the valuation made by the assessor, according to the rule prescribed by the law when in its opinion the property had been returned above or below the true value; (W. S. 1163, § 18,) but it had no power to make an assessment of its own.

It is also admitted that no taxes were charged against the railroad on the tax book of 1869, nor were there any entries in relation to this road on the delinquent tax book for that year, (or sale book; these terms being used synonymously in the record,) until December 1871.

It is also admitted that the record of the board of equalization shows no order for the assessment made by it for the year 1869. The assessment being void therefore, and not mere-

ly irregular or erroneous, the cases cited by the counsel for respondent, (Pacific R. R. vs. Dulle, 48 Mo., 282 ; Walden vs, Dudley, 49 Mo., 419 ; N. M. R. R., vs. Maguire, *Id.* 468, and 47 Mo., 483 ;) are not applicable.

5. Was the rolling stock of the corporation subject to taxation in Cass County? It is admitted that the principal office of the company is in St. Louis, where its directors reside and hold their meetings, where its managing officers live, its business is transacted, its principal machine shops and repair shops are situated, and where its rolling stock, when not in actual use on the road, is kept, and to which it is returned.

It is also admitted that there is no rolling stock in Cass County, except when in actual transit or while waiting to receive and discharge freight and passengers.

The statute provides that all property personal by the laws of this State, situated in a county other than the one in which the owner resides, shall be assessed in such last mentioned county. ( W. S., Ed. 1870, 1161, § 9.)

It is also provided that every person shall deliver to the assessor a just and true list of all property taxable by law, which he owns or of which he has the charge or management, being in any county of the State. (2 W. S., 1167, § 11.)

By another section, the list delivered under the preceding section 11, to the assessor, is to be transmitted to the assessor of the county in which such property may be, who shall assess the same as other taxable property therein. (W. S., 1168, § 16.)

While this provision authorizes the taxing of personal property being in a county in which the owner does not reside, it probably refers to such property as is capable of having an actual *situs*, separate from the person or domicil of the owner, and to some extent kept, used or maintained in such county, and not there casually or temporarily. It obviously cannot apply to the rolling stock of this corporation, which is only in the county when in actual transit or when temporarily detained to receive and discharge freight and passengers.

Upon this state of facts, I am of opinion, that for the purpo-

ses of taxation (as it regards its rolling stock) the corporation must be considered as having its residence in St. Louis, and there alone this property is liable to assessment and taxation. This conclusion is fully sustained by the following authorities namely, Sangamon and Morgan R. R. Co. vs. The County of Morgan, 14 Ill., 163 ; Welkey vs. City of Pekin, 19 Ill., 160 ; Ontario Bank vs. Bunnell, 10 Wend., 186 ; Hays vs. Pacific Mail Steamship Co., 17 How. U. S., 596 ; City of Sacramento vs. The California Stage Co., 12 Cal., 134 ; Orange & Alexandria R. R. Co., vs. City Council of Alexandria, 17 Gratt., 176 and 35 Cal. 282.

The taxes for the year 1870, were levied for both State and county purposes. In respect to the former as we have shown, this was unauthorized. But being rightfully assessed for county purposes, and no tender having been made to the collector for this part of the taxes, he was authorized to make the sale in question. The only mode in which the plaintiff could place the collector in the attitude of a wrong doer, was to tender the sum really due, and then have resisted the collection of the excess. As this was not done, it cannot complain that the sale was void. (Walker vs. City of St. Louis, 15 Mo., 563.)

The judgment of the Circuit Court is therefore affirmed as to the taxes for the year 1870, and under the stipulation, judgment will be rendered in this Court against the appellant for one cent and costs. As to the taxes for the year 1869, the judgment is reversed, and judgment will be rendered here against the respondent for one cent and costs.

The other judges (except Judge Wagner who is absent) concur.