STATE OF MISSOURI, EX REL. M. A. ROSENBLATT, Respondent, *v.* NEW LINDELL HOTEL COMPANY, Appellant.

### January 25, 1881.

1. Under the revenue law of 1872 real estate in St. Louis county was assessable annually.

2. Under that law the Court of Appeals of St. Louis County had the power to raise the assessment for taxation of real estate, without giving actual personal notice to the owner of the realty assessed.

APPEAL from the St. Louis Circuit Court, WICKHAM, J. *Affirmed.*

BROADHEAD, SLAYBACK & HAEUSSLER, for the appellant.

M. B. JONAS, for the respondent.

THOMPSON, J., delivered the opinion of the court.

According to an agreed statement of facts on file, the record shows that the respondent, plaintiff below, brought suit under the statutes in such case made and provided, upon the tax-bill mentioned in the petition, for the unpaid

taxes of the year 1876 on the property of the defendant
(appellant), the New Lindell Hotel Company, therein de-
scribed.

To this petition the defendant filed an answer, which
is in words and figures as follows: " Defendant, the New
Lindell Hotel Company, for answer to plaintiff's petition,
says that on the first day of August, 1874, there was begun,
as provided by law, an assessment of all property, real and
personal, in the county of St. Louis, for the purpose of
levying the taxes provided by law, and that at said assess-
ment the real estate in plaintiff's petition described and
owned by defendant was duly assessed at the sum of
$394,080, — its true value August 1, 1874, — in just pro-
portion to the assessed value of other property in St. Louis ;
and that all taxes levied for the purposes aforesaid, for the
year A. D. 1875, on said real estate, amounted to the sum
of $13,629.13½ and was by defendant duly paid. Defend-
ant further says that afterward said assessment of said real
estate made as aforesaid, was, without the knowledge or con-
sent of, and without notice to this petitioner, changed and
raised to the sum of $480,980, and was so changed and
raised as aforesaid after the first day of August, 1875, and
before the first day of August, 1876."

To this answer the plaintiff demurred for the reason that
the same as stated was not sufficient in law to bar the plain-
tiff's action ; and said demurrer was sustained by the court,
and the defendant declining to plead further, the court gave
judgment upon the pleadings and proof for the plaintiff.

The defendant filed a motion in arrest of judgment, for the
reason that the court erred in sustaining the plaintiff's de-
murrer to the answer, and also a motion for a new trial,
which motions were overruled and exceptions taken ; and
the defendant, the New Lindell Hotel Company, now brings
the case here by appeal.

. This precise assessment was passed upon and declared
valid by this court two years ago, in the case of *The State*

*ex rel.* v. *Adreon,* 7 Mo. App. 565. That was an application for *mandamus,* to compel E. L. Adreon, comptroller of the City of St. Louis, under the power conferred upon him by the charter, to correct this assessment. This relief was denied below, and the judgment was affirmed. We might stop here, and affirm the judgment below in this case on the authority of that case, especially since the conclusion there reached has found support in the views of Hough, J., in the case of *The State ex rel.* v. *Powers,* 68 Mo. 320, 326 ; but, owing to the importance of the question, we have thought it right to reassure ourselves by a second and independent examination of the subject.

The act of the Legislature in force at that time, the provisions of which must be looked to as governing this case, was adopted on the 30th of March, 1872. See Sess. Acts, 1872, p. 92. This act was designed as a revision of the entire revenue law of the State, which previously existed in many detached and fragmentary enactments. Sect. 48 of this statute provides as follows : " Real estate shall be assessed at the assessment which shall commence on the first day of August, 1872, and shall only be required to be assessed every two years thereafter. Each assessment of real estate so made shall be the basis of taxation on the same for the two years next succeeding." If there were no other provision the case would not admit of argument.

But it is perfectly obvious from an inspection of the statute that it provides for two schemes of assessment : one for the whole State, and one for St. Louis County. Sect. 48, which provides that real estate shall only be required to be assessed once in two years is among the provisions applicable to the State generally. A separate scheme for St. Louis County is found embodied in sects. 74 (73) to 88 (87) inclusive. In sect. 76 (75) it is expressly provided that the Board of Assessors in St. Louis County " shall commence their assessment on the first day of September *in each year,* and complete the same, and make their final return to the

president of the Board of Assessors on or before the first Monday of January *in each year.*" Sect. 78 (77) provides how the assessment books shall be made up and completed: "the same to be completed on or before the third Monday of March *of each year.*" Sect. 79 (78) provides that "As soon as said assessment books are completed, the president of the Board of Assessors shall give notice in three daily newspapers, one of which shall be printed in German, to be published one week, and by hand-bills, to be distributed throughout the county in public places by the district assessors, that said books are open for inspection, and also stating the time when the Court of Appeals will be in session." Then follows sect. 80 (79), which provides, among other things, that " the Court of Appeals shall meet on the second Monday of April *in each year*, to sit as such court, and shall remain in session for two weeks, if the business before them requires it, and no longer. Said Court of Appeals shall hear and determine all appeals in a summary manner, and correct and adjust the assessment-books accordingly; they shall determine, as far as possible, whether the property contained in said books has been assessed at its true value in cash, and in just proportion to the assessed value of other property; and to this end shall *increase or diminish* the assessed value of any property, real, personal, or mixed."

It is a familiar principle of statutory construction that general provisions are controlled by special provisions in the same statute relating to the same subject matter. The general provision contained in sect. 48 was displaced, so far as St. Louis County was concerned, by the special provisions just quoted.

It is perfectly consistent with the allegations of the defendant's answer that its property in question was assessed for taxes as having, on the first day of August, 1874, the value of $394,080, as there stated; that the defendant paid the taxes levied on this valuation as stated; that it was

again assessed in conformity with sect. 76 (75) of the act of 1872, between the 1st of September, 1875, and the 1st of January, 1876, and that the assessors, in making the new assessment for the year 1876, increased its valuation from $394,080, the valuation of the previous year, to the sum of $480,980. It is also consistent with the answer that the district assessors, in making the annual assessment for 1876, re-assessed the property at the same valuation which had been put upon it for the previous year, and that the Court of Appeals, meeting on the first Monday in April, 1876, changed the valuation thus put upon it by the district assessors, to the sum of $480,980. In either case, the valuation may have been made by the proper assessing body in strict conformity with law. If so, their action was conclusive; and whether they placed too high, or too low, a valuation upon the property, is not open to inquiry in the judicial courts.

A more serious question raised by the demurrer is, whether the Board of Equalization for the County of St. Louis, called the Court of Appeals, which must have acted upon this matter, had power to raise the assessment of property without *notice* to the owner. The statute nowhere requires actual notice to be given, although it fixes a time for the meetings of the board, prescribes when its sessions shall begin and end, requires general public notice of these meetings in three newspapers and by the distribution of hand-bills, and thus imparts general notice to *all*, of the time and place when it will exercise its functions, and gives all an opportunity to be heard.

We may concede that such tribunals, being of special and limited jurisdiction, must exercise their powers in strict conformity with the provisions of the statute conferring them, or their action will be void. If the statute requires them to hear testimony under oath, and they act arbitrarily and without testimony (*Phillips* v. *City*, 25 Wis. 594); or if the statute prescribes the time within which they shall

meet and exercise their functions, and they undertake to exercise them at a different time (*Sioux City, etc..R. Co.* v. *Washington County*, 3 Neb. 30); or if, in other like cases, they have departed from the mode of procedure pointed out by the statute, their action is undoubtedly void. Upon like grounds, where such a revising board is required to give notice before raising the assessed valuation of any person's property, and it does this without giving the required notice, its action is void. *Pacific R. Co.* v. *Cass County*, 53 Mo. 17, 29; *The State* v. *Drake*, 33 N. J. L. 194; *The State* v. *Anderson*, 38 N. J. L. 82; *Commissioners* v. *Lang*, 8 Kan. 284, 287; *Kansas Pacific R. Co.* v. *Russell*, 8 Kan. 558; *Cleghorn* v. *Postlewaite*, 43 Ill. 428; *Darling* v. *Gunn*, 50 Ill. 424, 428; *Lowell* v. *Wentworth*, 6 Cush. 221.

Where the statute does not require notice to be given, there is a conflict of authority upon the question whether, when an assessment has been once made, it can be increased by a revising board without notice to the owner.

In California and Nebraska it is held that although the statute empowers such a board so to act, without giving notice to the persons to be injuriously affected by its action, yet such notice must nevertheless be given, since no person ought to be deprived of his property without an opportunity to be heard. In the opinion of those courts, the injustice of doing this counter-balances the inconvenience of giving notice. *Patten* v. *Green*, 13 Cal. 325; *Sioux City, etc.; R. Co.* v. *Washington County*, 3 Neb. 30, 43. And in one of these cases it is intimated that the Legislature could not confer power upon such a board to proceed without notice, since this would infringe that provision of the Constitution which declares that no man shall be deprived of his property without due process of law. *South Platte Land Co.* v. *Buffalo County*, 7 Neb. 253, 258. These positions are supported by the high authority of Mr. Justice Cooley, who expresses the opinion that notice of the proceedings in

such cases, and an opportunity for a hearing of some description, are matters of constitutional right. Cooley on Tax. 266.

On the other hand, the Supreme Court of Illinois has expressly decided this question the other way. In a suit in equity to enjoin the collection of a railroad tax, it was held that it is not required that a corporation, whose property is assessed for taxation by the State Board of Equalization, shall have notice of the assessment, or of the rules adopted whereby to determine the value of the property, or that it shall have a right to appeal from the assessment. "The Constitution," said Schofield, J., "does not provide that persons or corporations whose property is assessed for taxation shall be notified of the assessment, or the rules adopted whereby to determine the value of the property, or that there shall be allowed the right of appeal in such cases." Porter v. Railroad Co., 76 Ill. 561, 598.

This decision has been expressly approved by the Supreme Court of the United States. *The State Railroad-Tax Cases*, 92 U. S. 575, 617, 618. In these cases it was charged that the State Board of Equalization of Illinois had increased the valuation of railroad property, as reported to the State auditor, without notice to the companies, and without sufficient evidence that it ought to be done ; and it was strenuously urged that, for want of this notice, the whole assessment of the property and levy of taxes were void: Mr. Justice Miller, giving the judgment of the court, said: " It is hard to believe that such a proposition can be seriously made. If the increased valuation of property by the board without notice is void as to railroad companies, it must be equally void as to every owner of property in the State, when the value assessed upon it by the local assessor has been increased by the Board of Equalization. How much tax would thus be rendered void it is impossible to say. The main function of this board is to equalize the assessment over the whole State. If they find

that a county has had its property assessed too high in reference to the general standard, they may reduce its valuation; if it has been fixed too low, they may raise it to that standard. When they raise it in any county, they necessarily raise it on the property of every individual who owns any in the county. Must each one of these have notice and a separate hearing? If a railway company is, by law, entitled to such notice, certainly every individual is equally entitled to it. Yet if this be so, the expense of giving notice, the delay of hearing each individual would render the exercise of the main function of this board impossible. The very moment you come to apply to the individual the right claimed by the corporation in this case, the absurdity is apparent. Nor is there any hardship in the matter. The board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of any one before it to assert a right or redress a wrong; and in the business of assessing taxes this is all that can be reasonably asked." *Id.* 609, 610.

As this question arises upon a demurrer to the defendant's answer, our conclusion upon it must depend upon the meaning which we give to the word "notice," as there employed. The rule of the common law that, in construing a pleading, every statement therein must be taken most strongly against the pleader, has been challenged by good authority, and has been frequently held inapplicable under the Codes. Pom. on Rem., sects. 546, 547. There are, however, certain particulars in which the rule must remain under any system of pleading. For instance, where the pleader states the title under which he claims, or any other fact essential to his right to maintain his action on defence, in terms of such brevity as not to convey an exact meaning, the words or terms used obviously ought not to be enlarged by intendment or construction. Applying this rule of interpretation, we must take the word "notice," in this pleading, in the sense put upon it in *St. Louis v. Goebel,* 32

Mo. 295 ; and in *Corneli* v. *Partridge*, 3 Mo. App. 575, to mean personal notice — an actual communication of a fact. And while we are ready to concede that where a person's property has been once assessed for taxation, the assessed valuation cannot, without impairing his constitutional rights, be raised without giving him some sort of notice of the proceeding and an opportunity to be heard ; yet we are not prepared to go to the length of holding that an actual communication of such a fact to each person so assessed is necessary. The fact that a public statute, of which every one must take notice, creates an official board vested with such a power, and requires it to meet for that purpose on certain days, to publish notice of such meetings in the newspapers, and by hand-bills, and provides that persons so assessed shall have an opportunity to attend its proceedings and be heard with reference thereto, so far as they may be affected by them, is, in our judgment, all that the Legislature is bound to concede. The power to raise revenue is necessary to the very existence of government. From its very nature it must be summarily exercised, and does not admit of the slow processes which obtain in ordinary judicial proceedings. The reservations which have been placed upon this power by the Constitution must, it is true, be carefully guarded. If an attempt is made to exercise it, not for governmental, but for private purposes, such attempt may be held void by the judicial courts, although not coming under any direct constitutional inhibition ; for there are certain implied reservations of rights in every free government which the Legislature cannot take away. *Loan Association* v. *Topeka*, 20 Wall. 655. But so vital a power to the safety and well-being of the State is to be exercised within a wide range of legislative discretion, and is not to be hedged about or hampered by unnecessary restrictions imposed by the judicial courts.

We hold, therefore, that the defendant was not entitled to notice — within the meaning of the word as employed in

his answer — of the act of the Court of Appeals of the county of St. Louis, in raising the assessed valuation of its property, as in its answer stated. We also hold that the assessors and the board, or either of them, had power so to raise it. It results from this that the demurrer to the answer was well taken, and that the judgment sustaining it must be affirmed. The other judges concur.