William S. Relfe, Superintendent, etc., Respondent, v. Columbia Life Insurance Company, N. C. Hudson, Collector, etc., Appellant.

January 24, 1882.

1. The assessment for taxes required to be made upon shares of stock in a corporation is not a charge against the corporation, and the tax is not payable by the receiver of an insolvent and dissolved corporation.

2. An assessor cannot increase an assessment for taxes without notice to the owner or custodian of the property assessed.

3. Where property under the control of another is, through fraud or mistake, not returned for taxation, the assessor has no authority to list it without notice to the custodian thereof.

Appeal from the St. Louis Circuit Court, Thayer, J. *Affirmed.*

Leverett Bell, for the appellant.

John D. Pope, for the respondent: The taxes which insurance and other companies are required by law to pay on shares of stock are not payable out of the assets of such companies after they have been ascertained to be insolvent and put into liquidation. — *Lionberger* v. *Rowse,* 43 Mo. 67; *Bank* v. *The Commonwealth,* 9 Wall. 353; *Cummings* v. *Bank,* 101 U. S. 157; *Curran* v. *Arkansas,* 15 How. 304; *Barings* v. *Dabney,* 19 Wall. 1; *Gill* v. *Balis,* 72 Mo. 429. A false and fraudulent return, made by the president of a corporation, of shares of stock held by third parties, is not conclusive on creditors, either as to amount, value, or ownership of shares. — *Dodge* v. *Woolsey,* 18 How. 331. The act of the assessor's chief clerk, in adding $100,000 to the amount which had been returned by the receiver of the Columbia Life Insurance Company, without notice to the receiver, was unlawful and invalid, even if it is considered to have been done by the assessor himself. — *Alexander* v. *Life Assn.* 73 Mo. —; *Pacific R. Co.* v. *Cass County,* 53 Mo. 18, 29; *Coolbaugh* v. *Huck,* 86 Ill. 600; *Ferguson* v. *Moss,* 69 Mo. 495.

BAKEWELL, J., delivered the opinion of the court.

This is a proceeding to charge the assets of the Columbia Life Insurance Company, formerly the St. Louis Life Insurance Company, which assets were in the hands of a receiver, with the payment of certain personal tax-bills in favor of the state, the city and county of St. Louis, and the public schools. The intervening petitioner is the collector holding the tax-bills. Three of the bills were allowed. As to them there is no question here, since the receiver did not appeal. Tax-bill No. 563, for $2,600, was allowed as to one-half only; and tax-bill No. 788, for $11,075.76, was disallowed.

The answer of the receiver presented three defences, to each of which the collector demurred. The trial court sustained the demurrer to the first defence, and overruled the others, and the parties declining to plead further, the cause was submitted and judgment entered.

The first defence, which went to all the bills, and which was held to be insufficient by the court, was to the effect that the personal property in the possession of the receiver is held by him under the authority of the court; that his possession is the possession of the court; that the property belongs ratably to the creditors of the insurance company, who are to return for taxation all interest which they have in the property so situated, and to pay all taxes on it. Therefore, the receiver says, the property is not taxable against him.

The second defence applies to the bill No. 788, for $11,075.76. The answer sets up that this tax-bill does not represent taxes due by the insurance company, or on property which it owned; that the amount is claimed to have been payable only on account of the stock that different persons held in the company, taxable for that year, which tax was a debt of the stockholders, and not of the company; that, under the statute as it existed at that date, the president of the company was required to furnish to the assessor a list of all persons owning stock in the company, and to add thereto a statement of the value of their stock;

that the company was required by the statute to advance
for the stockholders the amount due by them on their
shares, which advances the stockholders were required to
pay to the company; that the statutes did not make these
taxes a debt of the company, or a lien upon its assets; that, af-
ter the president had furnished this list of stockholders, and
before the company had advanced the amounts alleged to be
due on the stock, the company was dissolved by decree of
court, and all its assets placed in respondent's hands for the
benefit of creditors, and no one has, since the dissolution,
been required or authorized to advance these taxes for the
stockholders; that the president, in furnishing said list of
stockholders, attached thereto an untrue statement of the
value of the stock; that the company was then insolvent,
and its stock worthless; that this was known to the president,
and the fictitious valuation was placed on the stock by him
for the fraudulent purpose of making the company appear
to be solvent, so that it could do business contrary to law.

The third defence applies to bill 563, being a tax of
$2,600, for 1878. The answer sets up that, the company
being dissolved and respondent its receiver, the respondent,
being required to do so by the assessor, made a return for
1878, of all the property in his possession, power, or control,
and gave the true value thereof; that the bill is based on
that return; that after respondent had been assessed on
this return in the amount stated in the bill, the chief clerk
in the assessor's office added $100,000 to the return, which
the clerk claimed to be the face value of the securities
which the company, before its dissolution, had deposited
with the insurance department for the security of its
policy-holders; that these securities, since the dissolution
of the company, were never worth more than $50,000; that
respondent had no notice of this addition to his return, and
knew nothing of it; that the board of equalization was
never notified that respondent's return was false or fraudu-
lent; that respondent never received any notification from

that board, and never had a hearing as to the correctness of the return.

The receiver did not appeal. The only questions for us to consider are, whether upon the facts set out in the answer and admitted by the demurrers, tax-bill 788 was a valid charge against the assets in the receiver's possession ; and, whether the court committed error to the prejudice of appellant in not rendering judgment for the full amount of tax-bill No. 563.

1. The law governing the assessment for $11,075.76, made on the capital stock of the company represented by tax-bill 788, for the year 1876, was passed in 1872. Its provisions have been the law of this state ever since, and are to be found in the Session Acts of 1871 (p. 90), and Wagner's Statutes (p. 1165 *et seq.*, sects. 35–37), and Revised Statutes of 1879 (p. 1313, sects. 6692–6694). These provisions to the effect that persons owning shares of stock in incorporated companies are not required to deliver to the assessor a list, but the chief officer of the corporation shall deliver to the assessor a list of all the shares of stock and the names of persons who hold the same ; that the taxes on these shares shall be paid by the corporations, who may recover the amounts from the owners of the shares, and imposing a penalty upon the chief officer if he fails to make the return to the assessor, are to be found also in the revenue law of 1864. Acts 1863, p. 69, sects. 19–21. It is held that this assessment is not upon the capital stock, but distinctly and separately against the shares ; that by these provisions of the revenue law, no charge is made against the corporation or its capital, but that the liability is the liability of the shares. *Lionberger* v. *Rowse*, 43 Mo. 67. The statute says that the taxes assessed against the shares shall be paid by the corporation, but they are, nevertheless, not a debt of the corporation in the sense that they are a tax imposed upon it or its assets. The tax is owed by the shareholder, and by the corporation retained from

moneys of the shareholder in its hands, or recoverable from the shareholder, for whom the corporation holds its net assets.  Since the assessment is no charge against the capital of the corporation, it seems clear that it is not payable by the receiver of an insolvent and dissolved corporation, who could not recover it again from the shareholders, who has no property of the shareholders in his hands, and who holds the assets for the creditors, the stockholders being entitled to nothing where there is no surplus after the payment of debts.  The corporation, whilst solvent, is furnished with means to pay the liability of the stockholder to the state, and is treated as if a garnishee of the stockholder. Whilst it professes to be solvent, it holds itself out as having a surplus for the stockholder ; and state laws taxing the shares of a national bank, but requiring the bank to advance the taxes, are held constitutional, as appears by the cases cited by counsel for respondent, on the ground that this is not to impose a tax upon the bank, but to reach the stockholder through the bank.   The receiver in the case at bar, has nothing belonging to the stockholder, and cannot be made to pay the tax imposed, not upon the assets of the corporation, but upon the shares in the hands of the shareholder.   We are of opinion that the facts set up in the answer constitute a valid defence to the tax-bill No. 788, and that the circuit court rightly held that it was not a valid charge against the assets in the possession of the receiver.

2. We also think that the addition of $100,000 to the return of the receiver for the year 1878, was without warrant of law, as being made without notice of any kind to him.   The assessor may make a list when none is given. Rev. Stats., sect. 6689.  Where no list is delivered to the assessor, a double assessment may be made.   Rev. Stats., sect. 6690.  And where a fraudulent list is furnished to the assessor, a treble assessment may be made.   Rev. Stats., sect. 6691.  But we know of no authority to the assessor to in-

crease, without notice, the value given in the return. Section 6691 of the Revised Statutes requires notice to the person making the return, and a specification of particulars for a hearing of the question, where it is claimed that the list furnished is untrue. The authorities are conflicting as to whether even a revising board can increase an assessment without notice to the owner. And it has been held that, where the statute empowers the revising board so to act, it cannot increase the assessment without notice to the person to be injuriously affected. *Patten* v. *Green*, 13 Cal. 325; *Sioux City* v. *Washington County*, 3 Neb. 43; *Platte Land Co.* v. *Buffalo County*, 7 Neb. 258. We are clearly of opinion that the assessor cannot increase the assessment without giving the person to be injuriously affected an opportunity to be heard. An official board vested with this power, meeting on certain days for that purpose, of which everybody has public notice, may increase an assessment where authorized to do so, without actual personal notice to the owner affected; but the case presented by the admitted facts before us shows no notice, actual or constructive. And we are of opinion that, where property has been once assessed for taxation, the assessed value cannot be raised without some sort of notice to the owner or custodian of the property assessed. *The State ex rel.* v. *Hotel Co.*, 9 Mo. App. 450.

Under the provisions of the statute (Wag. Stats. 745, sects. 21, 22), the life insurance company was compelled to keep on deposit with the superintendent of the insurance department, securities worth $100,000. As it was upon these securities that tax-bill 563 was assessed for the taxes for 1878; as this levy was made under an assessment as of date August 1, 1877, and the company was not dissolved, and the receiver not appointed, until the following October, it is claimed that the property existed and was subject to taxation as the property of the company on August 1, 1877; that it was not included in the return of property afterwards made by the receiver, because not in his possession; and

that the case falls within the provision that, where, from any cause, no list of taxable property is given to the assessor in proper time and manner, the assessor shall himself make out the list on his own view, or on the best information he can obtain.   Wag. Stats. 1164, sect. 32.

When the life insurance company was dissolved the court took possession of its securities, and they were in the custody and control of the receiver, and not in the custody and control of the superintendent of insurance as trustee; as we held in *Relfe* v. *Spear* (6 Mo. App. 126).   It appears by the answer in this case, that Alexander, as receiver, made a return for 1878, of all the property under his possession, power, or control as receiver, and that the tax-bill 562, on which a recovery is had in this action, was based on that return.   That return could not have been made of property in the receiver's control on August 1, 1877, for he was not receiver until October. If it was claimed by the assessor that these securities were omitted, the claim must be that they were omitted from that return, the only return that was or could be made by the receiver for the taxes of 1878; and if there was such an omission, that return was false, and the act of the assessor in making this additional assessment against the life insurance company in the name of Relfe was, in effect, a finding that the return of the receiver was a false return, and a valuation of the property of the insurance company not based upon that return, and without notice to the receiver, who was the only person who did, or could, at the time the return was made, make the return to the assessor required by law.   Section 32 (Wag. Stats. 1164; Rev. Stats., sect. 6689) does not seem to be made with a view to the case of an omission, whether by fraud or accident, from a list of taxable property, of some personalty under the control of the person making return.   If we are to suppose a case, that Alexander, erroneously believing that he, as receiver of the life insurance company, had

nothing to do with its securities deposited according to law, and therefore, in good faith, omitted them from his return, and that the assessor, after the receiver was appointed, perceiving this, made out a tax-bill against the company in the name of the superintendent of insurance, then we do not believe that the assessor had any authority to do this without notice to the receiver who ought to have included the property in his return. Whether or not it would be the duty of the assessor in such a case to proceed against the receiver under section 34 (Wag. Stats. 1165), as for a false return made with intent to defraud, the statute nowhere authorizes the assessor, where a list of property under the control of a person is furnished, to treat that return as untrue, and to increase the valuation, without any notice to the person making the return. The plain meaning of the revenue law is that, after property is listed for taxation, the valuation shall not be increased without notice (*Pacific R. Co.* v. *Cass County*, 53 Mo. 30); and section 6689, which seems to have been enacted with a view to lands, cannot be interpreted to mean that the taxable property not listed, spoken of in that section, is any personalty under the custody, control, or ownership of one who has made a return to the assessor on oath and has omitted from that return property which he ought to have included.

We need not consider whether the trial court properly rendered judgment for one-half of this tax-bill. The receiver does not complain of the action of the court in this respect. The contention of appellant is that the judgment should have been for the entire bill. There appears to have been no error committed to the prejudice of appellant, and the judgment will be affirmed. Judge THOMPSON concurs; Judge LEWIS is absent.