LIVINGSTON COUNTY, Plaintiff in Error, *vs.* HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Defendant in Error.

1. *Railroad tax—Charter of Han. & St. Jo. R. R.—Act of Sept.; 1852, not an irrepealable contract—Liability of road for State, county and school tax.*—1. Under the act of September 20th, 1852 (Sess. Acts 1853, p. 15), the Han. & St. Jo. R. R. Co. was exempt from State taxation, except as provided in section 3 of that act. But the act was not a contract between the State and the road, such as could not be altered or repealed by subsequent legislation. (State vs. Han. & St. Jo. R. R., *ante* p. 143.) 2. The exemption of the road under its charter of 1849 from county taxation, still remains in force. 3. Under the above acts the road is not exempt from school taxes.

2. *Revenue—Railroad taxation—Section 3 of act of March 10th, 1871, not retrospective.*—Section 3 of the act of March 10th, 1871, touching taxation of railroads, (Sess. Acts 1871, p. 56) provided only for the assessment and collection of taxes upon property theretofore subject to taxation, which through inadvertence it had escaped. It did not operate "retrospectively," in the sense of that word, as used in the State Constitution.

3. *Revenue—Railroad school taxes—Constr. § 13, act of March, 1871.*—It was not intended by § 13 of the act of 1871 (Sess. Acts 1871, p. 58) that railroads should pay school taxes in any other districts than those through which it passed, or in which it held property. And the average rate of taxation spoken of in that section, on which to base the railroad tax, was to be made up from those districts, and none other. (Sess. Acts 1875, p. 129.)

4. *Revenue—Railroad county tax, under act of 1871, suit may be brought in name of county.*—For railroad taxes assessed under the act of 1871, (Sess. Acts 1871, p. 56) suit is properly brought in the name of the county.

### Error to Livingston Circuit Court.

*J. E. Wait*, for Plaintiff in Error, contended that for back taxes in default, the only proper mode of determining the tax rate was to take an average of all the sub-districts, and cited Porter vs. Rock Island & St. Louis R. R., 63 or 64 Ill.

He also contended that the charter of September, 20th 1852 did not have in contemplation school taxes, which were not then in existence, and hence could not have provided against their levy ; and that the legislature could undoubtedly establish a tax for the support of schools, which should be neither a State nor a county tax. (Sheehan vs. Good Sam. Hosp., 50 Mo., 155.)

He claimed that § 3 of the act of September, 1852 constituted no vested right in the respondent, such as would preclude the legislature from afterwards providing other modes

of taxation, as was done by the act of March 10th, 1871. On this point he cited City of St. Joseph vs. Han. & St. Jo. R. R., 39 Mo. 477.

*James Carr*, for Defendant in Error.

I. The third section of the act is retrospective in its operation, and hence is in violation of the 28th section of the first article of the Constitution of this State. (Dash vs. VanKleek, 7 Johns., 477; Norris vs. Beyea, 13 N. Y., 273; Plum vs. Sawyer, 21 Conn., 351; Whitman vs. Hapgood, 13 Mass., 464; State *ex rel.* vs. Macon County Court, 41 Mo., 453.)

II. There are twelve congressional townships in the county of Caldwell. The Hannibal and St. Joseph Railroad only runs through four of them—the northern tier of said townships. Each congressional township only composes one district for all purposes connected with the general interests of education in such township. And the "average rate of taxation" referred to in § 13 of the act of March 10th, 1871 is to be computed from those districts alone, not from them together with the eight other townships of Caldwell county. Hence the alleged assessment of school taxes made by the County Court of Caldwell county was, and is, null and void, under Art. I, § 30 of the State Constitution. (Cool. Const. Lim., 499, *et seq.;* Wells vs. City of Weston, 22 Mo., 385.)

III. There are three decisions of this court holding that the respondent is not taxable in any other way, or for any other tax than the one specified in the 3d section of the act of September 20th, 1852. (See 30 Mo., 550; 37 Mo., 265; 39 Mo., 476.) Large amounts of the stock of the respondent have been bought and are now held in the faith of these decisions. The Supreme Court of the United States has repeatedly held that when property has been bought and rights acquired on the faith of decisions of the highest court of a State, that property and those rights shall not be impaired by any subsequent decision. (Gelpcke vs. City of Dubuque, 1 Wal. 175; Dodge vs. Woolsey, 18 How., 331; Allcott vs. Supervisors, 16 Wal. 678.)

(Counsel also contended that the act of September 20th, 1852, was a contract between the road and the State, and that even if this were not so, that act was not repealed by the act of March 10th, 1871.—See brief of counsel in State vs. Han. & St. Jo. R. R. Co., *ante.* p. 143.)

NAPTON, Judge, delivered the opinion of the court.

This cause was decided on a demurrer to the petition, which was sustained. It would subserve no useful purpose to recite the petition or its numerous counts, which occupy twenty closely printed pages of the record.

The object of the petition is to recover the amount of the county tax and school tax, levied on the road under the act of March 11, 1871, the State auditor having assessed the road at $587,328 between the years 1861 and 1872.

The demurrer asserts that the charter of the road exempts the road from all county taxation ; that the act of the General Assembly in 1852 is a contract, and exempts the defendant from taxation except as is specified in the 3rd section of said act, and that the school tax is in violation of the provision of the Constitution of Missouri, which requires all property to be taxed in proportion to its value.

This demurrer was sustained and the case is brought here by appeal.

The only important question presented is whether the Han. & St. Jo. R. R. is exempt from county taxes and from school taxes.

The case of Han. & St. Jo. vs. Shacklett, (30 Mo., 550) ; State vs. Han. & St. Jo. R. R. (37 Mo., 265) ; State to use of, etc: vs. Shacklett, (Id., 80) and City of St. Jo. vs. Han. & St. Jo. R. R. Co., (39 Mo., 476,) are referred to as conclusive of the questions presented by the demurrer.

We have no disposition to depart from the points decided in any of these cases. Whether decided properly or not, the corporation now sued had a right to assume that the construction therein given to their charter would be adhered to, and upon the faith of these decisions stock may have been purchased.

It was conceded in all these cases, that the legislature could levy a State tax on this road, after the act of September 20, 1852, which was accepted by the company. The form in which this tax might be ascertained and levied was not deemed material in the case of Bailey, Seligman, &c. vs. Pac. R. R. Co., (U. S. Sup. Ct.), nor was it considered essential by this court in the case of the State vs. Han. & St. Jo. R. R. Co., decided at the present term. And in the case of Han. & St. Jo. R. R. vs. City of St. Joseph, (39 Mo., 476), it was held that a city tax on the railroad was valid, on the ground that municipal taxation for local purposes was not within the exemption from county taxes.

The original exemption of this road from county taxes has never been rescinded by the acts of the parties. The demurrer, therefore, in regard to so much of the petition as related to county taxes, was properly sustained. In regard to school taxes, they may be considered as originating since the charter ; and, therefore, nothing was said in it concerning them. Like the municipal taxes of St. Joseph, in 39 Mo., 476, they may be regarded as not within the exemption.

It is, however, urged that the 3rd section of the act of 1871, so far as it has been applied to school taxes, is retrospective, and therefore prohibited by our State Constitution. This section does not undertake to subject to taxation property, which at the date of the ordered assessment was not liable to taxation ; but merely to declare that in case property, which has been subject to taxation prior to the passage of the act, has escaped taxation either through the inattention of the owner or of the county officers, these back taxes shall be assessed and collected. It is only applying to railroad property the same system of revenue collections which applies to all other property in the State. It does not operate retrospectively in the sense of this word, as used in the Constitution.

The mode of assessment which seems from the statement in the petition to have been adopted in this case, under the 13th section of the act of March 10th, 1871, is undoubtedly objectionable and not authorized or intended to be authorized by

that section. The statement in the petition is, "that the said County Court at the said meeting thereof, held at the court house in said county, on the 5th day of August, 1872, from the returns in the office of the clerk of said County Court, ascertained the average rate of taxation for school purposes on each $100 worth of property in said county, as the same had been listed and assessed, levied by the several township school boards, trustees, directors and other proper authorities of the township in said county in which respondent's property was situate, and the said County Court from said returns in said clerk's office ascertained, determined and declared that the average rate of taxation levied for school purposes on each $100 worth of property, in such townships, districts and sub-districts, for each of the several years on the respective amounts stated in said court."

It is not easy to determine exactly what is meant by this allegation. The phraseology is obscure, and that of the 13th section is perhaps equally so, but we do not suppose it was intended that the road should pay school taxes in any other school districts, except such as it passed through, or in which the company owned property.

A person or corporation owning property in one school district is not taxed to support schools in any other district, although such other district may be in the same county. The legislature had no intention of making railroad companies pay any taxes except such as individual citizens had to pay on the same amount of property.

It is stated by counsel that this county has twelve school districts, and the road passes through only four of the twelve. It was not designed that the road should pay taxes in all the districts of the county, but only in such districts wherein its property was located. This is clear, and if the 13th section was construed to authorize a taxation of the roads in districts where there was no property of the company, the construction was, we think, erroneous. Or, if the average spoken of was determined by the rate of taxation for schools in all the twelve school districts, that would be equally erroneous. The

average should be determined by reference only to the four districts through which the road passed.

This is made quite apparent in the act of March 24, 1873. The first section of that act expressly declares, what indeed was manifestly intended by the act of 1871, "that railroads shall be subject to taxation for State, county or other municipal or local purposes to the same extent as the property of private persons."

The 12th section of the act of 1873 very clearly provides for the mode of assessing school taxes on railroad corporations, and is in conformity to the construction we have supposed should be given to the act of 1871.

A point has been made, that this suit should have been brought under the act of 1873, in the name of the State; but we think the suit was properly brought in the name of the county. An examination of section 17, of the act of 1873, shows that the remedy therein provided applied only to taxes levied under the provisions of that act; and did not affect the right to sue in the name of the county, for taxes assessed under the act of 1871.

The judgment is reversed and the cause remanded; the other judges concur.