THE STATE *ex rel.* LOVE, *Collector*, v. THE HANNIBAL AND ST. JOSEPH RAILROAD COMPANY, *Appellant.*

1. **Railroad Taxation**: BOARD OF EQUALIZATION : NOTICE. Under the provisions of the act of the legislature of 1871 (Acts, pp. 56–59) creating a state board of equalization to adjust and equalize the value of railroad property for purposes of taxation, it is the duty of the railroads to take notice of the time and place of the meeting of the board as fixed by law.

2. ———— : ———— : EVIDENCE. The law did not require that the evidence upon which the board based its valuation should be preserved, nor did it designate the evidence upon which such valuation should be made.

3. ———— : ———— : PRESUMPTION. The fact that the board fixed the same valuation for the company's property for the preceding years that it did for the year 1872 does not raise such a presumption that it acted arbitrarily and without evidence as will overcome the legal presumption that it honestly discharged its duties.

4. ———— : ————. Courts can grant relief against the mistake in judgment of the board only by direct proceeding in a manner provided by law.

5. ———— : ———— : OMITTED YEARS. The property of the defendant being subject to taxation for school purposes for the years 1867–1872 was, under section 3 of said act of 1871, liable for school taxes for those years, although not subjected thereto by appropriate legislation prior to said act of 1871.

6. **Constitution**: RATE OF TAX LEVY. The limitation of the present constitution as to the rate of levy for taxes applied only to years subsequent to its adoption ; it did not affect levies made after its adoption for years prior thereto.

7. **Hannibal and St. Joseph Railroad Company**: EXEMPTION FROM TAXATION : ROAD TAXES. The term "county taxes" includes road taxes within the meaning of the provision of the charter of the Hannibal and St. Joseph Railroad Company exempting it from county taxes.

The State ex rel. Love v. The Hannibal & St. J. Ry. Co.

*Appeal from Caldwell Circuit Court.*—HON. J. M. DAVIS, Judge.

REVERSED AND REMANDED.

*Thomas E. Turney* and *Strong & Mosman* for appellant.

(1) Defendant's twenty-first declaration should have been given. It was incumbent on the plaintiff to prove that the special board of equalization for the year 1872 had valued, equalized and adjusted the property of the defendant for the years 1867, 1868, 1869, 1870, 1871 and 1872, and that a part of it had been apportioned to Caldwell county for purposes of taxation. To make this proof, the plaintiff read from the exhibit filed with and made a part of defendant's answer certain allegations in the exhibit, and the proceedings of the special board of equalization for the year 1872, which are copied into the exhibit. The matter read in evidence was admissible as an admission of the defendant. *Dowzelot v. Rawlings*, 58 Mo. 75. And it must all be taken together. 2 Wharton on Evidence [1 Ed.] sec. 1103; 1 Greenleaf on Evidence [10 Ed.] sec. 201. (2) Defendant's declarations of law, numbered 1, 2, 3 and 4, should have been given, and plaintiff's declarations, numbered 1, 2 and 3, refused. The capital stock of defendant was subjected to taxation for the years 1867 to 1871, inclusive. G. S. 1865, secs. 27, 28 and 29, p. 103; *State v. Railroad*, 77 Mo. 202-213. All of defendant's property was represented by its capital stock. *Railroad v. Shacklett*, 30 Mo. 550; *State v. Railroad*, 37 Mo. 265; *State to use Railroad v. Shacklett*, 37 Mo. 280. It is presumed that double taxation was not intended, and, taxation of the capital stock being shown, it devolved upon the plaintiff to show that defendant's property had, for those years, been also subjected to taxation in specie. Cooley on Taxation [1 Ed.] p. 165,

and cases cited; *Valle v. Ziegler*, 84 Mo. 214–219. The acceptance by defendant of the act of the legislature of September 20, 1865, Session Acts, 1853, page 15, was only a surrender of its exemption from state taxes. This surrender did not affect in any way its relation to other taxes; nor was its property subjected to taxation in any other respect by the acceptance. *Railroad v. Shacklett, supra; State to use Railroad v. Shacklett, supra; State v. Railroad, supra; Livingston County v. Railroad,* 60 Mo. 516. To give the special board of equalization jurisdiction under the act of March 10, 1871, it must be shown not only that defendant's property was subject, but that it was subjected, to taxation in specie, for the years 1867 to 1871, inclusive. Session Acts, 1871, p. 56, sec. 3.; *State v. Railroad,* 77 Mo. 202–213; *Valle v. Ziegler,* 84 Mo., *supra.* (3) Defendant's declaration of law numbered 19 should have been given; and plaintiff's declarations, numbered 10 and 11, refused. *First.* The property road tax is not a new tax, originating since defendant's charter; but has been imposed since 1835, at least. R. S. 1835, p. 549, sec. 30. Since that time, and before, the county courts have been charged with the duty of opening, repairing and improving public roads, and the expense, when not provided for by a property tax, has been paid out of the county treasury, or the three-per-cent. fund, in the discretion of the county courts. R. S. 1835, p. 549, sec. 30; R. S. 1845, p. 975, sec. 54; Session Acts, 1851, p. 277, sec. 14; R. S. 1855, p. 1376, sec. 47; Cooley on Taxation [1 Ed.] 108, 109. Prior to 1865, all taxes were classed as state taxes, county taxes, town taxes, and although a property road tax was authorized almost continuously from 1835, unless road taxes are included in the class of county taxes, there was never, prior to 1864, authority anywhere in the statutes for the levy of road taxes. R. S. 1835, pp. 529, 530, 540 and 602, sec. 7; R. S. 1845, pp. 927, 928, 946 and 1050; R. S. 1855,

p. 1349, sec. 1; p. 1526, sec. 7. By the act of the general assembly, approved February 15, 1864, a school tax is authorized, and the trustees of school districts are empowered to levy and collect it. Session Acts, 1863–64, p. 104, secs. 2 and 3. After this the taxes are classed in the revenue acts as state, county, town, or municipal, and school. *Second.* By the General Statutes of 1865, a property road tax is imposed, and the county courts for the first time are empowered to levy it by that name. G. S. 1865, p. 290, sec. 6. But only property subject to pay a state and county tax is subjected to the payment of the road tax. This continued to be the law until, by the act approved March 23, 1868, the county courts were authorized to levy a road tax by that name, but only on property subject to pay a county tax. Sess. Acts, 1868, p. 154, sec. 27. This continued to be the law during all the years for which road taxes are sued in the first six counts of plaintiff's amended petition. It is admitted that defendant's property was not and is not subject to a county tax. *Third.* By the act of March 10, 1871, the county courts are authorized to levy only county and school taxes. P. 57, sec. 12; p. 58, sec. 13. If the taxes sued for as road taxes are not county taxes, the county court was not authorized to levy them. If they are it was not authorized to levy them on defendant's property. Defendant's property had not only not been subjected, but it had never been subject, to county taxes. Sess. Acts, 1871, p. 56, sec. 3. The only remaining claim for road taxes, or county road taxes, is sued for in the eleventh count, being road taxes for the year 1877. The statute in force at that time authorized the county courts to levy a road tax, but the constitution of 1875 authorizes the county courts to levy only taxes for county purposes. The constitution went into effect November 30, 1875, and the provisions regulating taxation are self-enforcing. *Schools v. Patten,* 62 Mo. 444; *Householder v. City of Kansas,* 83 Mo.

488. Unless, then, the road tax was a county tax, its levy by the county court was unauthorized and void. If a county tax, it is admitted that defendant's property is exempt from its payment. (4) The court erred in rendering judgment for the township road taxes sued for in the eighth, ninth and tenth counts of the amended petition. The exemption of defendant's property from county taxes was an exemption of the property from road taxes. Authorities, *supra*. Changing the name of the tax, and intrusting its imposition to another body than the county courts, cannot deprive the defendant of the exemption. Cooley on Taxation [1 Ed.] p. 55, and cases cited; *Bank v. City of Kansas*, 73 Mo. 555-558, and cases cited.

*Crosby Johnson* for respondent.

(1) What credit shall be given to the whole or any part of the exhibit offered in evidence as a confession was a matter exclusively for the jury; and they were at liberty to reject what was in defendant's favor, while they gave credit to that which was against him. *State v. Martin*, 28 Mo. 530; *Green v. State*, 13 Mo. 382. (2) The action of the state board in assessing the value of defendant's property was judicial and not subject to collateral attack. *Ins. Co. v. Charles*, 47 Mo. 462; *Railroad v. Maguire*, 49 Mo. 482; Burroughs on Taxation, sec. 103. Its decision would not have been void, even though it had acted arbitrarily and heard no evidence. *Railroad v. State Board*, 64 Mo. 294; *New York v. Davenport*, 92 N. Y. 604. (3) After the amendment of defendant's charter in 1852, its tangible property was made the subject of taxation for state purposes. Railroad Laws, p. 116, sec. 3. Counties were confined to the same subjects of taxation as were taxable "by law for state purposes." R. S. 1845, p. 947, sec. 1; G. S. 1865, p. 121, sec. 76. (4) All property in the state was subjected to taxation for school

purposes in 1866, if it was in the power of the state to do so. Acts, 1863-64, p. 104, secs. 2-3; Const. 1865, art. 9, sec. 8; art. 11, sec. 16; G. S. 1865, p. 95, sec. 1; p. 263, sec. 21; p. 276, sec. 10. Defendant's capital stock was never subjected to taxation for any purpose. The state was authorized to tax the roadbed and tangible property of the defendant. Railroad Laws, 116, sec. 3. (5) The order assessing school taxes was valid. *Caldwell County v. Railroad*, 60 Mo. 521. School tax is not a county tax. *Livingston County v. Railroad*, 60 Mo. 516. The rate of levy was unaffected by the constitution of 1875. Const. 1875, "Schedule," sec. 2; *Scotland County v. Railroad*, 65 Mo. 123. (6) In exercising its control over roads, the county court is a state agent, not a county agent. *Reardon v. St. Louis County*, 36 Mo. 555; *Swineford v. Franklin County*, 73 Mo. 279. (7) A road tax is not a county tax but a new and independent tax. G. S. 1865, p. 293, sec. 26; *St. Joseph v. Railroad*, 39 Mo. 476. (8) If there is a reasonable doubt as to whether a road tax was comprehended within the words "county taxes," as used in the charter, the legality of the road tax must be upheld. *Railroad v. Gaines*, 97 U. S. 697, 708; *Hodge v. Railroad*, 99 U. S. 348, 355; *Railroad v. Cass County*, 53 Mo. 17; *Bank v. Tennessee*, 104 U. S. 493, 495. (9) Unless a road tax was a county tax, when defendant's charter was granted, the imposition of such a tax does not impair the obligation of a contract. *Nelson v. Parish*, 111 U. S. 716, 720; *McCracken v. Hayward*, 2 How. 612; *Aycock v. Marin*, 92 Am. Dec. 56, 65; *Louisiana v. Mayor*, 109 U. S. 285, 288; *Merriam v. U. S.*, 107 U. S. 795; *Wolf v. New Orleans*, 103 U. S. 358, 367; *Van Hoffman v. Quincy*, 4 Wall. 535. (10) Repairing and opening roads was a burthen on townships, not the counties. R. S. 1845, p. 964, sec. 23. (11) All property, which the legislature could subject to taxation for road purposes, was subjected to such taxation in 1866. G. S. 1865, p. 293, sec.

26. The sixth section of that law, cited by the defendant to show that the road tax must fall on such property only as was subject to a county tax, has relation to special road taxes; while the road taxes sued for are general road taxes. (12) Act of 1871 authorized county court to levy road taxes. Acts, 1871, secs. 1 and 8, p. 56. (13) Act repealing township organization intended that taxes due them should be collected. Acts, 1877, p. 416; secs. 1, 2, 3; R. S. 1879, secs. 3150-2. Taxes due townships were debts within the meaning of the repealing act. *State v. Donaldson*, 28 Mo. App. 190; *People v. Seymour*, 76 Am. Dec. 521; *Dubuque v. Railroad*, 39 Iowa, 61. (14) In levying road taxes county court represents road districts. R. S. 1879, sec. 6950; *Township v. Boyd*, 58 Mo. 276.

BRACE, J.—This is an action brought in the name of the state at the relation of the collector of Caldwell county to recover certain taxes assessed and levied against the property of the defendant in said county for the years 1867-68-69-70-71-72-73-74-75-76 and 1877, with interest and penalties for the non-payment of the same.

The plaintiff recovered judgment for the amount of the road tax for all of the said years except the year 1873, and for the amount of the school taxes for the years 1867 to 1872, both inclusive, the whole aggregating with cost the sum of $78,121.12. The court found for the defendant as to all the taxes for the year 1873, and as to all other taxes for other years sued for, except the items stated. The taxes for which judgment was recovered were upon the defendant's real estate and road-bed, together with the sidetracks and station houses appurtenant thereto, situate in said county. The errors assigned, and for which it is contended the judgment should be reversed, will be noticed in the order in which they are urged by counsel.

I. It is conceded by counsel that it was shown by competent evidence that the road and school taxes, for the years 1867 to 1872, inclusive, were levied in pursuance of the valuation placed upon defendant's property in said county by the state special board of equalization for railroad property created by act of the general assembly. Sess. Acts, 1871, pp. 56–59. But it is contended that that evidence, consisting in part of the journal of the proceedings of said board, also shows that the valuation of defendant's property made by its president was increased by the board without notice, arbitrarily, and without hearing any evidence. It appears satisfactorily from the evidence that the board met and continued in session at the time and place when and where the assessment was made as required by law, of which time and place it was the duty of the defendant to take notice ; that they took up the return made by the defendant of its property and made this assessment "after mature deliberation." The only ground for the contention that they made the increase without evidence is that the record of their proceedings does not show affirmatively that such increase was made upon any other evidence than the return of defendant's officers.

The law did not require that the evidence upon which they based their valuation should be preserved, or upon what evidence it should be based. Upon "the evidence produced before them" they were required to increase or reduce the aggregate valuation of any railroad company as "they may deem just and right." Sec. 7, p. 57, *supra*. There is no foundation for the contention that there was no evidence before them upon which to base an increase ; they had the report of the defendant of its own valuation of its property, and of every other railroad company in the state, as a basis for equalization ; for increase or reduction, to such a standard as to them might "seem just and right." What

other evidence they may have had in regard to the value of defendant's property does not appear upon the face of the record of the board, nor was it necessary that it should so appear. *H. & St. Joe Ry. Co. v. State Board*, 64 Mo. 294.

That the board fixed the same valuation upon defendant's property for the precedent years that they did for 1872 may raise a suspicion in the minds of counsel that they acted arbitrarily and *without* evidence, but such a suspicion surely ought not to be permitted to overcome the legal presumption that these sworn officers, acting in a *quasi*-judicial capacity, honestly discharged their duties, and against any mere mistake of their judgment no court can give relief, except by a direct review of such judgment in a manner provided by law. We find no error in the ruling of the court that the taxes were legally assessed in this respect, if the defendant's property was subject to taxation for the years for which they were so assessed.

II. It is contended that the defendant's property is not liable for the school taxes for the years 1867 to 1872, for which plaintiff recovered judgment, for the reason that although *subject* to taxation for school purposes for those years ( *Livingston County v. Railroad*, 60 Mo. 516 ), yet not having been *subjected* to taxation for such purposes by appropriate legislation prior to the act of March 10, 1871, it could not be subjected to taxation under the provisions of that act for those years. For support of this contention reliance is placed on the language of the third section of said act, and upon the decision in *State v. Railroad*, 77 Mo. 202.

Said section reads as follows : Sec. 3. "In case any such railroad or other property of any such company heretofore specified shall have been *subjected* to taxation prior to the passage of this act, for any year for which it shall not have been assessed and paid taxes, then," etc.

In *Livingston County v. Railroad, supra,* in construing this section in an action for taxes levied under the same act against the property of defendant in that county, the court, per NAPTON, J., uses this language : "This section does not undertake to subject to taxation property which at the date of the ordered assessment was not liable to taxation, but merely to declare that in case property has been *subject* to taxation prior to the passage of the act, has escaped taxation either through the inattention of the owner, or of the county officers, these back taxes shall be assessed and collected." School taxes for the same years were included in the action in that case as in this, and that case would seem to be decisive of the question, unless the contention can be maintained upon the authority of the case in 77 Mo., page 202, in which, in effect, it was held, in favor of a subsequent purchaser, that a lien in favor of the state could not be created against the property in specie of the defendant railroad company for taxes for the years preceding the levy and assessment under that act, whose capital stock during those years had been subjected by appropriate legislation to taxation, upon the principle that it was not to be held that the legislature intended to favor double taxation, and that, having provided for the taxation of the capital stock during those years, the property of the company in specie could not be subjected to a lien, attempted to be thereafter created for such taxes upon the property in specie.

The case at bar is to be distinguished from that, in this : That the capital stock of the defendant during those years was neither subject to nor subjected to taxation for school purposes, for the reason that, by legislative enactment, its capital stock was exempt from taxation for such purposes, and its property in specie was subject to taxation therefor as will more fully appear in the subsequent discussion of another branch of the case, and was subjected thereto by the general

legislation providing for the levy and collection of taxes upon such property in specie. Sess. Acts, 1852, p. 15, sec. 3 ; G. S. 1865, chap. 11, p. 95, sec. 1, and chap. 46, pp. 262 and 263, sec. 21, *et seq.* Consequently, there is no question of double taxation in this case, the vital one, which lay at the root of the controversy in that case, and which led to the distinction made between property *subject to* and property *subjected to* taxation.

III. The fact that these school taxes were levied after the constitution of 1875 went into effect, and that the rates for the years for which they were levied were in excess of the limit prescribed by that constitution, would in no way affect the validity of the levy if they did not exceed the limit of taxation authorized by law for such purposes at the time when such taxes ought to have been levied. The *nunc pro tunc* levy provided for by law speaks as of the date when it should have been made. The limitation of the constitution operates only on taxes for years subsequent to its adoption.

IV. It is contended that the defendant is not liable for the road taxes for the years 1867 to 1872, for the same reasons for which claim is made that it was not liable for school taxes, hereinbefore considered ; but, further, that it is not liable for road taxes for any of the years for which plaintiff recovered judgment, and this claim will now be considered.

The defendant was incorporated in the year 1847. By its charter, its capital stock was exempted from all state and county taxes. Sess. Acts, 1847, p. 157, sec. 4 ; Sess. Acts, 1837, p. 252, sec. 24. In consideration of a grant of lands made by the state and accepted by the company by act of the general assembly, approved September 20, 1852 ( Sess. Acts, 1852, p. 16, sec. 3 ); it became bound, in each year after its completion, " to pay into the treasury of the state a sum of money equal to the amount of the state tax on other real and personal property of like value " upon the actual cash value of all its

property in specie. By virtue of this legislation while the capital stock *eo nomine* remained, and still remains, exempt from state and county taxes, its tangible property became, and is, subject to state taxes, but not subject to county taxes. *H. & St. Joe Ry. Co. v. Shacklett*, 30 Mo. 550 ; *State v. Railroad*, 37 Mo. 265 ; *State v. Railroad*, 60 Mo. 143. It is not exempt, however, from municipal taxes imposed by authority of the state ( *City of St. Joseph v. Railroad*, 39 Mo. 476 ), nor from school taxes imposed by like authority. *Livingston County v. Railroad*, 60 Mo. 516.

And the question now presented for consideration is, whether the road tax sued for is within the meaning of the term " county taxes," as used in the act of 1837, *supra*, incorporating the Louisiana and Columbia Railroad Company, to all the rights, privileges and immunities of which the defendant became entitled by the act of 1847, *supra*. At the same session of the general assembly at which the Louisiana and Columbia Railroad Company was incorporated, the act of 1835, by which provision had been made for assessing, levying and collecting a road tax upon real estate, the statute of 1835, page 544, sections 30, 31, 32 and 33 was repealed ( Sess. Acts, 1837, p. 110 ), and no general act has been found in the statutes from that date until 1851, providing for a property road tax as distinguished from other county taxes. From the organization of the state government the county courts of the state have been charged with the duty of opening and keeping in repair the public highways ( R. S. 1825, p. 688 ; R. S. 1835, p. 546 ; R. S. 1845, chap. 157, p. 960 ; R. S. 1855, chap. 137, p. 1367 ; R. S. 1865, chap. 52, p. 289 ), and to some extent they have always been a charge upon the general revenue of the county.

In 1835, provision was made ( Laws, 1835, p. 553 ) for the apportionment and distribution of the road and canal fund to the several counties, and thereafter for

many years this fund regularly distributed to the counties at stated periods, and the compulsory labor of the residents of the road districts supplemented by payments in certain instances authorized to be made out of the county treasury were the means thereafter provided by law for opening and keeping in repair the public highways of the state. The burden of erecting and maintaining bridges on such roads, when the cost exceeded twenty-five or fifty dollars, has always been borne by the general county revenue fund except in so far as it was relieved by private subscription. R. S. 1835, p. 106 ; R. S. 1845, chap. 22 ; R. S. 1855, chap. 22 ; G. S. 1865, chap. 53.

By act of the general assembly, approved March 3, 1851 ( Sess. Acts, 1850, p. 277, sec. 14, *et seq.*), the property of residents of road districts liable to work on the road was subjected to a road tax to be levied by the county court. This act was amended and carried into the Revised Statutes of 1855, page 1376, section 47, *et seq.* In 1865 the operation of this act was extended, and the county courts were authorized to levy a special tax for the improvement of roads upon property subject to pay a state and county tax ( G. S. 1865, p. 290, sec. 6 ), and to borrow money on the credit of the county and issue bonds for that purpose, and levy a special tax for the payment of accruing interest thereon. Sec. 7, *supra.* And in addition county courts were authorized to levy a road tax upon all property subject to taxation in an amount not exceeding thirty per cent. of the amount of the state tax. Sec. 26, *supra.* This act was amended in 1868 by an act then passed repealing the law of 1865, by which the county courts were authorized to borrow money on the credit of the county for the purpose of opening and improving public roads, and to levy a sufficient amount of revenue to pay the interest accruing thereon, and if necessary to levy a special tax for the payment of such interest. Sess. Acts, 1868, p.

151, sec. 7. And by the same act in addition it was provided (sec. 27, *supra*) that "for the purpose of opening, repairing and improving roads, and in order to raise the necessary funds to pay the expenses of any or all of said opening, repairing and improvements, the county courts of the various counties shall levy a special tax, not exceeding four mills on the dollar, of the taxable property of the county and all property taxable by law, which shall be known as the 'road tax;' said levy to be made at the time and in the same manner as the county revenue is levied, and hereafter all property whether belonging to non-residents or others subject to pay *a county tax* shall be subject to pay a road tax," etc.

This law in the main was in force when the act of 1871 was passed, providing for a uniform system of assessing and collecting taxes on railroads ( Sess. Acts, 1871, p. 56 ), by which the special state board of equalization created by that act were required to "apportion the value of all lands, work-shops, depots and other buildings belonging to each railroad company to the *counties, cities* or *incorporated towns* in which such lands, work-shops or depots and other buildings are situate, and the aggregate value of all other property of each railroad company shall be apportioned to each county, city or incorporated town in which such road shall be located according to the ratio which the number of miles of such road completed in such county shall bear to the whole length of such railroad" ( section 8 ); and after making provision for the levy of state taxes on such property. Sec. 11. The action of the board was to be certified to the clerks of the county courts of the several counties, and the county courts were authorized to levy *for all county purposes* on such proportionate value, so certified, such taxes as may be authorized by law at the same time and at the same rate as may be levied on other property. Sec. 12. Upon such proportionate

value provision was also made for the levy of school taxes. Sec. 13. The act then provides for the enforcement of the payment of .the *state, county and school taxes* thus to be levied. Sec. 14, *et seq*.

The act of 1871 was amended by an act approved March 24, 1873 ( Sess. Acts, p. 63 ), in which provision was made for the levy of municipal township taxes, and the mode of levying and collecting municipal taxes was more specifically defined. The several taxes as classified under this law were state taxes, county taxes, municipal township taxes, school taxes and municipal taxes ; and this classification has since been maintained. Sess. Acts, 1874, p. 130 ; Sess. Acts, 1875, p. 119 ; R. S. 1879, sec. 6879. During the years 1874, 1875 and 1876 Caldwell county was under the township organization act. By the law then in force in counties thus organized a road tax was authorized to be levied upon all "real and personal property in the township made taxable by law" *"for state and county purposes."* Sess. Acts, 1873, p. 108, secs. 7–21, and Sess. Acts, 1875, p. 149, sec. 2. In the year 1877 Caldwell county had resumed its normal county organization ; by the general road law then in force it was provided that there should be set aside an amount "from the general county revenue sufficient for road purposes to be called 'the road tax.' " Sess. Acts, 1877, p. 393, sec. 20.

At the time the defendant received its charter exempting it from all state and county taxes, and for ten years prior thereto, the general revenue fund of the county had been charged with the payment of certain expenses incurred in the opening and improving of public roads; and, so far as any tax was raised for such purpose, it was raised as a county tax, for that, in common with all the other purposes of county government. So far as defendant's property is concerned this continued to be the law for nearly twenty years afterwards. The law provided for the levy upon such property of taxes only for state, county and municipal

purposes ; from two of these its property was exempted ; of these two, one, the county tax, included such money as it was then found necessary, and as was then being raised, for road purposes by taxation. The legislature in exempting it from county taxes necessarily exempted it from road taxes. The defendant, by its acceptance of the act of 1852, relinquished its exemption from state taxes on its property in specie, but has never relinquished its exemption from county taxes. While the county courts since 1865, by law, have been authorized to levy a road tax, *eo nomine*, upon property to be applied exclusively to road purposes, yet that does not change its nature as a county tax.

The only classification possible for such a tax, whether from a consideration of the legislation providing for it in the various road laws, to which reference has been made, or the various acts providing for the assessment and levy of taxes upon railroad property, is, as a county tax, for road purposes. The legislature has never undertaken to lift the burden of maintaining the public roads from the counties and to place it upon the state treasury to be met by a levy of state taxes to sustain it. The tax is levied, collected and disbursed by the county authorities ; its rate is uniform over the whole county, but may be varied in different counties. It is for a purpose that has always been recognized in the legislation of the state as a county purpose ; as a county burden to be met by a county tax, and as such there can be no doubt that it comes within the exemption conferred by the legislature upon defendant in respect of the property upon which such taxes were levied in this case.

Besides, as we have seen by the various laws authorizing it, whether in the shape of a county road tax, or a township road tax, its levy was limited to property subject to pay a state and county tax, and, as defendant's property was not subjec to pay at county tax, it

could not be made a charge upon it. If the foregoing conclusions are correct the result must be that the judgment of the circuit court in favor of the plaintiff for the school taxes ought to be sustained, and for the road taxes ought to be reversed. The judgment of the circuit court will therefore be reversed and the cause remanded with direction to the circuit court to enter up judgment for the plaintiff in accordance with this opinion for the school taxes and penalties sued for in the first six counts of the petition, and for the defendant as to all other taxes sued for. All concur.