THE STATE ex rel. RICE, Collector, Appellant, v. C. H. HARRISON.

Division One, March 1, 1910.

Taxation: Assessment: By Board of Equalization: Notice. Where the assessor did not send a personal assessment list to the property-owner until after he had turned over his books to the county court on October 1, but did thereafter, and the property-owner returned it on or about December 31, listing the value of money and notes at $27,500, and thereafter the county board assessed the property at the same valuation, it was not necessary for the board or county clerk to give notice to the property-owner. The Act of 1903 requires notice only in case the board adds omitted property, and under the facts the property was not omitted in the sense used in the statute, but the board simply assessed the property given in by the property-owner at the valuation he placed upon it himself.

Appeal from Clinton Circuit Court.—*Hon. Alonzo D. Burnes*, Judge.

REVERSED AND REMANDED.

*E. C. Hall* for appellant.

(1) The assessment list is the basis of taxation of personal property and after being delivered by the

person in charge of the property, to the assessor and by him filed with the county clerk, becomes a record which cannot be changed or amended except by order of the county court. In this case the list was regular in all respects and contained a proper schedule of the property at the valuation required by law; was signed and sworn to, and its correctness is not denied. R. S. 1899, secs. 9144 and 9147; Lenox v. Harrison, 88 Mo. 496; State ex rel. v. Bank, 120 Mo. 168; State ex rel. v. Seahorn, 139 Mo. 610; State ex rel. v. Carr, 178 Mo. 229. (2) The assessment list so made was filed with the county clerk, put upon the assessor's book and copied on the tax book with the taxes levied, extended thereon as upon other property in said book, and the manner in which it was carried to those books could not injure the owner of the property, or in anywise increase his burden or do other than he must have expected would be done when he returned the list. That the list was put on the assessor's book in a manner different from some other lists amounts to nothing more than an informality, and such informality does not avoid the assessment. R. S. 1899, secs. 9179, 9202, 9329; Railroad v. Gracy, 126 Mo. 483; Cooley on Tax. (2 Ed.), pp. 283-4-5, 305; State ex rel. v. Bank, 120 Mo. 161; Welty on Assessments, secs. 232, 236; State ex rel. v. Phillips, 137 Mo. 259; Bird v. Sellers, 113 Mo. 592; State. ex rel. v. Hurt, 113 Mo. 96; Boyd v. Ellis, 107 Mo. 394; Black v. McGonigle, 103 Mo. 192. (3) The county board of equalization had jurisdiction both of the subject-matter and of the person in this case and had the right to order the list entered upon the assessor's book, and to "tax the same as similar property of other persons is taxed." Laws 1903, p. 253; R. S. 1899, sec. 9131; State ex rel. v. Baker, 170 Mo. 389; State ex rel. v. Board, 108 Mo. 235. (4) No notice was necessary to be given defendant in this case because the entry made of the property for taxation was identical with the voluntary list offered by defend-

ant for assessment. (5) While the assessor did not file a complaint against the defendant for failure to give a correct list, he did file the list as given and the board of equalization had the right and power to cause the same to be entered on the assessor's book. Laws 1903, p. 253; State ex rel. v. Carr, 178 Mo. 234; State ex rel. v. Seahorn, 139 Mo. 611.

*Mytton & Parkinson* for respondent.

(1) The attempted and pretended assessment made by the order of the board of equalization at its meeting on the 13th day of April, 1905, adding property omitted by the assessor from his book, without causing a notice to be served upon the owner giving him an opportunity to appear before said board and show cause why said assessment should not be made, is null and void. Laws 1903, p. 253; Cooley on Taxation, p. 267; 8 Cyclopedia Law & Proc., p. 1134, note 89. (2) There being no notice given to the owner of the property added by the board of equalization to the assessor's book by its order of April 13, 1905, and no appearance at any meeting of the board of equalization by the owner of the property attempted and pretended to be added to the assessor's book by this order, said order and pretended assessment are null and of no effect. Laws 1903, p. 253; State ex rel. v. Baker, 170 Mo. 389; State ex rel. v. Board, 108 Mo. 235. (3) Except in pursuance to statutory authority no assessment could be made by the county board of equalization. State ex rel. v. Cunningham, 153 Mo. 642; Judson on Taxation, 211, 212; Railroad v. Apperson, 97 Mo. 300.

WOODSON, J.—The relator, as collector of revenue of Clinton county, instituted this suit in the circuit court of that county, against the defendant, as curator of the estate of Walter, Virginia and Eunice de Steiguer to recover back taxes due for State, county

and school purposes for the year 1905, aggregating $418. A trial was had before the court, which resulted in a judgment for the defendant; and the relator duly appealed the cause to this court.

The facts are brief and are practically undisputed. They are as follows:

Defendant for some cause, not disclosed by the record, neglected to make out and deliver to the county assessor a personal assessment list, as required by law, of the personal property, money and effects in his hands and under his control as the curator of said estates, on the first day of June, 1904. Sometime after October of that year, the collector notified him of that fact, and inclosed to him one of the ordinary blank assessment lists, with a request that he fill out and return same to the assessor's office, at Plattsburg. On or about December 31, 1904, the defendant returned to the assessor, at Plattsburg, by mail, the assessment list before mentioned, wherein he placed the value of the property in his hands at the sum of $27,500. This list had been lost and could not be produced at the trial. He testified, however, that he did not place those figures in the column headed "money and notes," but simply made a statement upon the blank list, showing the balance which was charged against him as such curator of said estates on an accounting as of June 1, 1904. This, however, is positively denied by Mr. McWilliams, the county clerk, a witness for defendant, who entered the list in the tax books. He testified that the return list "shows exactly what the books show."

This transaction is best explained in the language of Mr. McWilliams:

Cross-examination by Mr. E. C. Hall:

"Q. Mr. McWilliams, you were the clerk of the board of equalization at the time this record was made? A. Yes, sir; secretary of the board. Q. Do you know the facts upon which this record was made? A. Yes,

226 Sup—11

sir. Q. State whether or not there was a list of the property, assessment list, made out by Mr. Harrison, filed before the board at that time? A. There was. Q. Calling for the amount of $27,500? A. Yes, sir. Q. And that, among other lists, was a lot of lists made out by the individuals themselves and sent in too late? A. Sent in after the county assessor turned his books over, but before the board of equalization— Q. Tell the court how that occurred, with regard to the curator or guardian. A. It occurred in this way, as it occurs every year: The county assessor turned his books over in October. After October, after the county assessor turned his books over, quite a number of lists were omitted from the books as the county court approved it. They gave notice, had some blank lists sent to the ones who omitted to give in their assessment between October and April. There was some thirty lists in that call. They were sent to the county assessor and he sent them to the county court and they were put on there by the county court in April. That was the way the lists were put on. Q. Have you made search for that list of Mr. Harrison? A. Well, while I was clerk, Mr. Harrison asked for the lists two or three times. I always gave him the lists called for, as well as I know. In January, I believe it was the first Monday or Tuesday in January, we looked for the list at that time and didn't find it. I don't know, it may be misplaced. I thought may be the collector had it."

It is admitted that the list cannot be produced at this time.

By witness: "I expect may be it is put in the wrong box down there."

Redirect examination:

"Q. This list you speak of, you don't pretend to know what it shows? A. Yes, sir; it shows exactly what the books show, because I entered it myself. It was signed by C. H. Harrison. Q. Give the wording

of it? A. Well, I could not do it. It's the regular county assessment list sent in by Mr. Harrison with the valuation in that book. I am positive of that, for the reason no list was placed on the book except the order these lists were on. Every list was signed that was there. There is no question of that. Q. You don't pretend to remember what that list stated, though? A. I pretend to say it stated that amount of money in the lists belong to the heirs, money and notes. Under the head of money and notes. Q. Money and notes? A. Yes, sir. Q. You say under the head of money and notes. This list you speak of had a column 'Money and Notes?' A. Yes, sir; it was the usual county assessment list. Just what that recites in the record. Under the head of money and notes, '$27,500.' Q. That was the heading on the list? A. It is in the list under that head, yes, sir. Of course three or four or five times under that. Notes secured and notes unsecured, that is, mortgages secured and mortgages unsecured, but under the head of money and notes comes that amount. Q. You don't know when Mr. Harrison sent that list to the assessor? A. No, sir; I don't remember the date. I sent the blanks out to those people myself. He asked me to do it. Q. Was the list by C. H. Harrison, curator, or by C. H. Harrison? A. I could not say as to that. Q. It was a list and this is a copy of it? A. That doesn't pretend to be a copy of the list; it simply pretends to give the amount of money. There is nothing in that list except money and notes. Q. Didn't that list say 'Balance due, $27,500?' To refresh your memory? A. No, sir; I have no recollection of anything of that kind being in any list I ever saw. Q. You have no definite recollection of exactly what it did contain except you think it was money and notes? A. No, I don't think anything about it. I know it was money and notes, because I entered the list myself and I could not make these

entries except by taking the list to make them. There is no other way to make them.''

Thereafter the assessor turned over to the county court a number of personal assessment lists, one of which was the one in controversy. Thereafter the county board of equalization met and organized, as provided by law; and, among other things, the following proceedings were had:

On Thursday, April 13, 1905, the following entry appears on page 42 of the records of the county board of equalization of Clinton county:

''On motion the following lists which have been sent to the county assessor since he turned his books over to the county court be placed on the personal assessment book for 1905 based on the ownership of property June 1, 1904. C. H. Harrison money, notes, $27,500, and other lists.''

In pursuance of said order there was placed by the secretary of the board upon the personal assessment book of Clinton county, Missouri, for the year 1905, at page 143, the following entry:

''Lists sent to the county assessor since he turned his books over to the county court based on the ownership of property on the 1st day of June, 1904, and ordered placed on the assessment book of 1905 by the county board of equalization. C. H. Harrison, curator, township Cameron, for Walter, Eunice and Virginia de Steiguer.

| | |
|---|---|
| State taxes ........................$ | 46.75 |
| County taxes .................... | 96.25 |
| School taxes Cameron .......... .... | 275.00 |
| Total ....................$ | 418.00 |

''Money, notes, bonds and other credits, class five, six, seven, eight, nine, $27,500.''

Thereafter in the year 1905, upon a date not shown, the following entry appears upon the tax books of Clinton county, Missouri, for the year 1905:

"Lists sent to the county assessor since he turned his books over to the county court based on the ownership of property on the 1st day of June, 1904, and ordered placed on the assessment book for 1905 by the county board of equalization; C. H. Harrison, curator, township Cameron.

| | |
|---|---|
| Money, notes, bonds and other credits.....$27,500.00 | |
| State tax 17 cents per hundred dollars..... | 46.75 |
| County taxes ............................ | 96.25 |
| School taxes, Cameron ................... | 275.00 |
| Total taxes .........................$ | 418.00 |

"Curator for Walter de Steiguer, Virginia de Steiguer and Eunice de Steiguer."

It was admitted that there was no other assessment against Clinton H. Harrison, curator, except the one quoted.

In the year 1905 there was also entered on page 37 of the personal delinquent list for the year 1905 the following entry:

"Lists sent to the county assessor since he turned his books over to the county court based on the ownership of property on the 1st day of June, 1904, and ordered placed on the assessment book for 1905 by the county board of equalization: Harrison, C. H., curator.

| | |
|---|---|
| Valuation ........ .... .........$ | 27,500.00 |
| State taxes ..................... | 46.75 |
| County taxes ................... | 96.25 |
| Cameron school taxes ........... | 275.00 |
| Total ............... .......... | 418.00." |

It is conceded that defendant was not notified of the action of the county board of equalization in ordering the estate of his wards to be taxed and placed upon the personal tax book for the year 1905; and that he did not appear before said board, nor have an opportunity to be heard in opposition to said assessment.

The record shows that the assessor had a rule of his own by which he assessed all personal property at sixty per cent of its actual value; and that he assessed all personal property in that county for that year according to that rule. But the record shows that this property was assessed at its full cash value.

I. This record discloses the fact that the defendant did not furnish to the assessor of Clinton county an assessment list of the money and notes mentioned in this suit prior to October 1, 1904, the date on which the assessor returned the taxbooks to the county court; and, consequently, it was not assessed by him, as provided for by section 9144, Revised Statutes 1899. So, it is contended that if there had been a valid assessment made of this property for the taxes sued for, it was made by the county board of equalization of Clinton county. That was attempted to be done, as appears by its orders made on April 13, 1905, before set out.

Counsel for defendant assail the validity of that assessment for the reasons: (1) that he was not notified of said assessment, as provided for by section 1 of an act approved March 27, 1903; and (2) that he had no opportunity afforded him to be heard in the premises. Consequently, they insist the assessment is null and void, because it takes his property without due process of law.

These propositions are so closely connected and intimately related to each other, we feel justified in considering all of them together, for the reason that whatever is said regarding the one will apply in a greater or less degree to the other.

Said act reads as follows:

"Section 1. The county board of equalization at its annual meeting in each year, in addition to the powers now conferred by law, shall have authority to assess and equalize the value of any property that may

have been omitted from the assessor's books then under the examination by said board, and in case said board shall add any property, real or personal, to said assessor's books, it shall cause notice in writing to be served upon the owner of such property, stating the kind and class of property, and the value fixed thereon by said board, and naming the time and place, not less than five days thereafter, when and where such owner may appear before said board and show cause why said assessment should not be made. At the time fixed said board shall again meet and give an opportunity to said taxpayer to be heard in regard to said assessment and may change or alter the same upon its being shown by said owner that said assessment was erroneous or improperly made; otherwise, said property and the valuation, as fixed by said board, shall be extended upon the assessor's books, as in case of other property. Said notice shall be signed by the clerk of the county court and shall be served by the sheriff of the county, and it shall be the duty of the prosecuting attorney, when called upon by the board of equalization, to represent said county in any such proceedings. In case of the assessment of real estate belonging to non-residents, publication may be made of the additional assessment, in the same manner as publications required by law where the assessment has been increased by said board.''

As regards the reasons urged against the validity of this assessment, we are of the opinion that neither of them is sound.

The record discloses the fact that defendant had entered his appearance in the cause by filing with the assessor a list of the money and notes which were in his hands as such curator, on December 31, 1904, which he was required to do on or before that date by section 9145, Revised Statutes 1899, wherein he stated the value of said money was $27,500.

Those acts clearly give the board of equalization jurisdiction over the person of defendant and over the $27,500 worth of property mentioned, as is provided for by section 9145, Revised Statutes 1899, which reads as follows:

"If any person required by this chapter to list property shall be sick or absent when the assessor calls for a list of his property, the assessor shall leave at the office, the usual place of residence or business of such person, a written or printed notice, requiring such person to make out and leave at the place named by said assessor, on or before some convenient day named therein, not less than ten days nor more than twenty days from the date of such notice, a sworn statement of the property which he is required to list, and shall leave with such notice a printed or written blank for the statement required of such person. The date of leaving such notice and the name of the person required to list the property shall be carefully noted by the assessor; and if any such person shall neglect or refuse to deliver the statement, properly made out, signed and sworn to as required, the assessor shall make the assessment, as required by this chapter; Provided, that the assessor may omit assessing the penalty in cases of neglect, where he is satisfied the same is unavoidable and not willful."

Section one of the Act of 1903, in express words, authorizes the board of equalization "to assess and equalize the value of any property that may have been omitted from the assessor's books then under the examination by said board."

But it will be observed that said section one requires notice to be given to the property-owner only in those cases where the board *adds other property* to the assessor's books, not placed thereon by him. That is clearly shown by the following language, taken from said section, to-wit: "and in case said board shall add any property, real or personal, to said assessor's

books, it shall cause notice in 'writing to be served upon the owner of such property," etc.

In answer to this, it might be suggested that the record in this case shows that the board of equalization did add the property in suit to the assessor's books. Literally speaking, that is true, but, clearly, that is not the meaning in which the Legislature used the word "add" in that section of this act. This act must be construed in connection with all other statutes bearing upon the duties of the board. This is shown by the first clause of the act, where it provides that the "board of equalization at its annual meeting in each year, in addition to the powers *now conferred by law,*" shall perform the duties, etc. That being true, we must turn to those statutes and ascertain their provisions.

Sections 9130, 9131, 9132 and 9133, Revised Statutes 1899, read as follows:

"Sec. 9130. There shall be in each county in this State, except the city of St. Louis, a county board of equalization, which board shall consist of the county clerk, who shall be secretary of the same, but have no vote, the county surveyor, the judges of the county court, and the county assessor, which board shall meet at the office of the county clerk on the first Monday in April of each year: Provided, that in any county having adopted township organization, the sheriff of said county shall be a member of said board of equalization. Provided, further, that in counties containing a population of more than seventy thousand and less than one hundred thousand, such board shall meet upon the first Monday of March in each year.

"Sec. 9131. Said board shall have the power to hear complaints and to equalize the valuation and assessments upon all real and personal property within the county which is made taxable by law, and, having each taken an oath, to be administered by the clerk, fairly and impartially to equalize the valuation of all the taxable property in such county, shall immediately

proceed to equalize the valuation and assessment of all such property, both real and personal, within their counties respectively, so that each tract of land shall be entered on the taxbook at its true value: Provided, that said board shall not reduce the valuation of the real or personal property of the county below the value thereof as fixed by said State board of equalization.

"Sec. 9132. The following rules shall be observed by county boards of equalization: First, they shall raise the valuation of all such tracts or parcels of land and any personal property, such as in their opinion have been returned below their real value, according to the rule prescribed by this chapter for such valuation; but, after the board shall have raised the valuation of such real estate, it shall give notice of the fact, specifying the property and the amount raised, to the persons owning or controlling the same, by personal notice, through the mail or by advertisement in any paper published in the county, and that said board shall meet on the fourth Monday of April, except in counties containing a population of more than seventy thousand and less than one hundred thousand, in which counties such board shall meet on the fourth Monday of March of each year, to hear reasons, if any may be given, why such increase should not be made; second, they shall reduce the valuation of such tract or parcels of land or any personal property which, in their opinion, has been returned above its true value as compared with the average valuation of all the real and personal property of the county.

"Sec. 9133. The said board shall hear and determine all appeals made from the valuation of property made by the assessor in a summary way, and shall correct and adjust the assessment accordingly. The county clerk shall keep an accurate record of the proceedings and orders of the board, and the assessor shall correct all erroneous assessments, and the clerk shall adjust the taxbook according to the orders of said

board and the orders of the State board of equalization: Provided, that in adding or deducting such per centum to each tract or parcel of real estate as required by said board, he shall add or deduct in each case any fractional sum of less than fifty cents, so that the value of any separate tract shall contain no fractions of a dollar.''

By reading these sections of the statute, it will be seen that the board of equalization is only given the power to hear complaints and equalize the valuation and assessments of property theretofore furnished by property-owners to the county assessor, and by him assessed. But said section 1 of the Act of 1903 goes one step further and authorizes the board of equalization ''to *assess* and equalize the value of any property that may have been *omitted* from the assessor's books,'' etc., whether previously assessed by him or not; evidently intending thereby to cover cases of the character under consideration. But neither the Act of 1903 nor do any of the statutes mentioned make it the duty of the board to give notice to the property-owner, except, first, where the board, under section 1 of the Act of 1903, added property to the assessor's books, which the owner had omitted to give in to the assessor; and, second, under section 9132, where the board raised the valuation given in by the property-owner. But in the case at bar the board of equalization did neither of those things. It did not add property to the assessor's books, which the property-owner omitted giving. It simply assessed the money and notes the defendants gave in; nor did the board increase the value of the property as given by the defendant. He valued the money and notes at $27,500, and the board assessed them at that value.

In other words, the board simply assessed the property given in by the defendant at the value he himself placed upon it.

If the defendant had made out his assessment list and had returned it to the assessor prior to October 1, 1904, the date on which the latter turned over the assessor's books to the county court, then doubtless the assessor would have assessed the property at $27,-500, just as he assessed, practically, all other property, and would have placed it upon the assessment books; but because of that omission on the part of defendant, the assessor was prevented from assessing this property and placing it upon his books, as the law required; but he delivered said list to the board of equalization, and, in obedience to the mandates of section 1 of the Act of 1903, it, as before stated, assessed this property given in by the defendant, and at the value he placed upon it.

We have carefully considered the cases of State ex rel. v. Baker, 170 Mo. l. c. 389, and State ex rel. v. Board of Equalization, 108 Mo. 235, cited by counsel for defendant. Neither of those cases is applicable here. The Act of 1903 had not been enacted when those cases were decided. But independent of that, the assessment in this case is clearly valid under the rulings in the cases of State ex rel. v. Springer, 134 Mo. 212, which overrules the latter cases above cited. In discussing this same question of notice, the court, on page 226, said: "The action of the board in the case at bar became a matter of record (section 7520), April 13, 1893. It then was the privilege of the bank officers to appear, at the session of the board appointed for the fourth Monday of April to show cause, if any, 'why such increase should not be made,' to quote the terms of the statute (section 7519). The meeting was in fact held at that appointed time; but no representative of the bank made any objection then to the assessment. Such procedure is 'due process of law.' It has been distinctly so held by the Federal court of last resort. [State Railroad Tax Cases (1876), 92 U. S. 575; Hagar v. Dist. No. 108 (1884), 111 U. S. 701.] And there are

many State decisions to the same general purport. [Hambleton v. Dempsey (1851), 20 Ohio 168; O'Neal v. Bridge Co. (1861), 18 Md. 1; Porter v. Railroad (1875), 76 Ill. 561; State ex rel. v. Runyon (1879), 41 N. J. L. 103; Gillett v. Treas. Lyon Co. (1883), 30 Kan. 166; Spalding v. Hill (1888), 86 Ky. 656; St. Louis, etc., Ry. Co. v. Worthen (1890), 52 Ark. 529.] In dealing with such a question as this case presents, decisions from other states should be used with caution and applied with due regard to the statutory law (not always cited) which lies behind them. We believe, however, that the cases above mentioned illustrate, at least, a general principle having a vital bearing on the result of this appeal, namely: that a statutory appointment of a date to make objections to antecedent steps (in the matter of assessments for taxation) affords a sufficient opportunity for a hearing thereon to answer the requirements of due process of law. We are not unmindful that there are remarks in State ex rel. v. Board (1891), 108 Mo. 235, not entirely in accord with the foregoing views. But those remarks were unnecessary to the judgment, which was finally placed on the safe ground that the objecting party actually appeared, and was duly heard by the board of equalization—a fact justly held to avoid the force of any objection of want of notice. Moreover, this division did not in that case pass upon the effect of the statute (section 7519) as giving notice and opportunity for objections by virtue of its own terms. We hence do not regard the remarks referred to as conclusively barring all investigation of the question of statutory notice, particularly when the full court had already held that a meeting of an equalizing board, at a time and place required by law, imposed a duty on parties in interest to take notice thereof. [State ex rel. v. Railroad (1890), 101 Mo. 120. See also Railroad v. County Clerk (1874), 57 Mo. 223.] We hold that as the statute requires no notice of an increase of assessment of personal property, other than

is afforded by the record of the board of equalization, and permits parties objecting thereto to appear at an appointed date thereafter to show cause against such increase, no other notice thereof is demanded under the Constitution and laws of this State, when the board of equalization meets at the time so appointed. In such case the law itself gives the notice. If the lawmaking authority intended further notice, it could readily have so ordered, as it has already done with respect to the increase of assessments of real property.''

The judgment is, therefore, reversed and the cause remanded for a new trial. All concur.